☞ Véase la página 390.

## MARTÍNEZ v. DELGADO ET AL.*

APELACIÓN procedente de la Corte de Distrito de Ponce.

### SOBRE reconsideración de sentencia.

\* La opinión emitida en este caso en junio 17, 1911, se inserta a continuación de la presente.

No. 653.—Resuelto en mayo 10, 1912.

JURISDICCIÓN—MODIFICACIÓN DE UNA SENTENCIA POR EL TRIBUNAL SENTENCIADOR DESPUÉS DE APELADA.—Apelada una sentencia, pierde generalmente la corte sentenciadora su jurisdicción para modificarla a menos que se haga previa notificación y consentimiento de la parte apelada.

SENTENCIA—APELACIÓN—MODIFICACIÓN DE UNA SENTENCIA APELADA.—Apelada una sentencia y modificada en ciertos extremos sin importancia, previa notificación y consentimiento de la parte apelada, por la corte sentenciadora después de interpuesto el recurso, la sentencia original no queda sustituída ni anulada por la sentencia enmendada, y la fecha de la sentencia primitiva es la que rige, debiendo considerarse la enmienda subsiguiente como una orden *nunc pro tunc* o relativa a la sentencia original, y el recurso interpuesto y pendiente no queda perjudicado por dicha modificación.

ACCIÓN REIVINDICATORIA—IDENTIFICACIÓN DE LA FINCA—CAMBIO DE LINDEROS.—El mero hecho de que en una escritura se hayan consignado erróneamente los linderos de una finca, no efecta la situación de la finca cuando se ha descrito, mencionando a uno de los anteriores dueños como colindante por el este con tierras que se sabe que radican al oeste, y por el oeste con tierras que se sabe que radican al este, y cuando en la descripción de la finca si se comienza por el punto que reclama el demandado, no quedaría comprendida la tierra en litigio sino la de un colindante, y sobre todo teniendo en cuenta que los terrenos en litigio fueron segregados de una finca de 760 cuerdas y que el terreno que se alega que está situado entre las dos fincas en litigio, formaba parte de otra finca distinta de 400 cuerdas que originariamente colindaban entre sí.

Los hechos están expresados en la opinión.

Abogado de El Pueblo cuando se presentó la moción sobre reconsideración: *Sr. Jesús M. Rossy, Fiscal.*

Abogado del apelado: *Sr. José Tous Soto.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

El abogado de la apelada nos llama la atención al hecho de que la sentencia en este caso, dictada en abril 30, 1910, quedó

enmendada o modificada por virtud de la resolución o senten-
cia de julio 18, después de haber sido notificada debidamente
la otra parte, para probar lo cual ha presentado una certifica-
ción a este tribunal.  También hace cita de autoridades en las
que se sostiene, que debe siempre presumirse que la acción to-
mada por la corte fué después de hacerse la debida notifica-
ción.  El fundamento de nuestra anterior sentencia y opinión
con respecto a la relación existente entre estas dos resolu-
ciones, fué el de que la corte de distrito había perdido su juris-
dicción sobre el caso, por el hecho de haberse interpuesto re-
curso de apelación contra la sentencia de abril 30.  Sin la
debida notificación al apelado de la propuesta enmienda en la
sentencia y la aceptación por la parte contraria, la corte sen-
tenciadora por lo general pierde su jurisdicción después de
interpuesto el recurso de apelación, teniendo el apelante el
derecho a insistir en que se resuelva el recurso por el tribunal
de apelación.  Sin embargo, en la presente apelación está de-
mostrado por otras consideraciones, la jurisdicción que tene-
mos para revisar la sentencia de abril 30.

Se interpuso apelación en debida forma contra la sentencia
de abril 30, y permitimos que se nos remitiera una copia cer-
tificada de la sentencia después de haberse hecho el traslado
de la causa.  La apelación en sí nos dió jurisdicción.  Después
de la debida notificación, esta sentencia de la corte de distrito
fué modificada por resolución de julio 18, 1910, en la que se ex-
presaba que en vista de la moción hecha por la apelada solici-
tando que se enmendara la sentencia dictada en abril 30 de
1910, dicha sentencia debía ser enmendada en la forma en que
se indicó.  Después siguió la sentencia en su totalidad en la
que la única modificación fué la que se refiere a que se entre-
guen a la demandante los frutos percibidos por el *receiver* o
administrador que fué nombrado en el caso.  La resolución
principal, o sea aquella en que se otorgó la propiedad a la
demandante y apelada quedó sin alteración alguna.  La sen-

tencia de julio 18 de 1910 aunque en su forma es una sentencia, y como tal fué registrada, no sustituyó a la sentencia de abril 30. Esta última había sido y continúa siendo una sentencia, desde la fecha en que fué dictada. Pudo haberse ejecutado desde abril y hubiera cambiado o fijado el título de la apelada desde aquella fecha. La prescripción hubiera comenzado a correr contra ella desde entonces, pues en aquella fecha fué que se resolvieron sus derechos. La sentencia posterior pudo ser considerada, o como una orden *nunc pro tunc* o como una en relación a la sentencia ya dictada en abril 30. Este precepto se sostiene en el caso de *Estate of Potter,* 141 Cal., 425 que ha sido citado por la apelada. Aunque es cierto que las partes consintieron en que se hiciera un cambio o modificación, tal hecho no alteró en manera alguna a la apelación que estaba pendiente. Esto aparece más claramente de la certificación que se encontraba al final de la transcripción, que es como sigue:

"Nosotros, Rafael Palacios Rodríguez, Fiscal del Distrito y en representación del demandado El Pueblo de Puerto Rico y apelante, y José Tous Soto abogado del demandante y apelada, por el presente convenimos y certificamos que lo que precede es una transcripción fiel, conteniendo las copias correctas y exactas, necesarias para esta apelación, de los originales obrantes en la Secretaría de la Corte de Distrito de Ponce en el presente caso; y que lo transcrito constituye los antecedentes, documentos, pruebas y demás procedimientos, tenidos en cuenta por la Corte de Distrito de Ponce, para pronunciar la sentencia apelada; firmando esta transcripción para que constituya el récord de esta apelación y sea usado como tal en la vista de la misma. Ponce, Puerto Rico, diciembre 24, 1910."

Está firmado por los dos abogados.

Los autos y documentos se describen como correctos y resulta claro que se tuvo la intención de que se procediera con la apelación, de la que nunca perdimos la jurisdicción por el hecho de que las partes estuvieran conformes en que se hiciera la enmienda.

En la nueva vista de este caso el abogado de la apelada manifestó ante este tribunal, que la apelada no había hecho un completo examen en su primer alegato porque ella se fundaba principalmente en la regla establecida por este tribunal, de que cuando la prueba es contradictoria esta corte no revocará la sentencia apelada a menos que se demuestre que haya habido prejuicio, parcialidad, pasión o algún otro elemento parecido. La apelada no solamente alega ahora ante esta corte una contradicción en la prueba, sino que hace un examen más completo de la prueba documental que se presentó. La duda que surgió en nuestra mente fué debida al cambio radical y no explicado que existe al parecer en los linderos de la finca que se trataba de reivindicar y porque según la declaración de algunos testigos, la finca No. 174, que trataba de reivindicar el apelado, aperecía en un sitio completamente distinto. Nosotros creímos que estas cuestiones podrían aclararse mejor en otro juicio, pero habiendo considerado y examinado la cuestión más ampliamente, quedamos convencidos de la certeza de las alegaciones hechas por la apelada.

La descripción de la finca que reclama la apelada en su demanda, es como sigue:

"Pedazo de terreno radicado en el barrio de San Patricio, antes Guaraguaos, del término municipal de Ponce, compuesto de 84 cuerdas si bien en el registro figuran 76 solamente, en lindes por el este con la Sucesión Joglar, por el sur con el río de San Patricio, por el oeste con una quebrada y con una finca de 180 cuerdas, propiedad de Juan Príncipe, de la cual subastó El Pueblo de Puerto Rico 90 cuerdas primeramente y después 60 más, para el pago de contribuciones, y por el Norte con la cuchilla que divide las jurisdicciones de Utuado y Ponce."

Esta es la finca No. 174 y la descripción que de la misma se hace en la demanda es la última descripción que existe en el registro de la propiedad. Es también la descripción contenida en los traspasos inmediatamente anteriores al que se hizo a la apelada. Sin embargo, cuando la finca No. 174 fué

segregada primeramente de una finca de mayor extensión, su descripción era la siguiente:

"Porción de terreno sita en el término de esta ciudad, barrio de Guaraguaos, sitio de San Patricio, bajo los puntos y linderos siguientes: 'se dió principio en una piedra agujereada que está en la orilla del río, siguiendo al costado y colindancia línea recta con Don José Ayala hasta llegar a la altura de Yauco, donde está un árbol de laurel que hace punto y esquina con dicho Ayala, y siguiendo cuchilla arriba hasta llegar a un plano en la misma cuchilla a donde está otro árbol de guaba que hace punto con Juan Salcedo, de allí siguiendo al Poniente por línea recta hasta llegar a una loma de cuchilla, y de allí siguiendo a una hoya abajo con vueltas y revueltas hasta llegar al río de San Patricio.' Tiene de cabida setenta y seis cuerdas, etc."

Esta fué la inscripción primitiva o expediente archivado en el registro, pero cuando los herederos de Eusebio Martínez adquirieron la finca algún tiempo después, se hizo otra inscripción en la que se reproducía la anterior, sustituyéndose a Rivera por Ayala y agregándose: "siendo las colindancias hoy de la referida finca, por el oeste con tierras de Ramón Rivera antes de José Ayala y Juan Salcedo; por el norte con la cuchilla de Yauco, por el este una quebrada seca que separa terrenos de don Félix Jorge; y por el sur con el río San Patricio."

Esta inscripción fué la que dió origen a la principal confusión que existe en este caso. Las inscripciones últimas demuestran que los terrenos de Joglar están hacia el este de la finca No. 174, mientras el anterior traspaso coloca al parecer a Joglar hacia el oeste.

Juan Príncipe Vázquez adquirió la finca y la vendió a la demandante y apelada, volviendo a adquirirla nuevamente dicho Juan Príncipe Vázquez de José Ortiz. Este último la adquirió en 1907 por virtud de un pleito y ejecución que se siguió contra Juan Príncipe Vázquez. La misma finca que distintas veces se describió como compuesta de 76 u 84 cuerdas de terreno, fué adquirida por Juan Príncipe en el año 1903 de los here-

deros de Eusebio Martínez y este último adquirió dicha finca de su hermano Mauricio Martínez en el año 1864, con anterioridad a cuya fecha la finca formaba parte de otra compuesta de 760 cuerdas de terreno que pertenecía a Mauricio Martínez y Benito de Arce.

Juan Príncipe Vázquez era dueño de otra parcela de terreno compuesta de 180 cuerdas, según se ha expresado en la demanda. Una parte o porción de esta finca fué embargada por El Pueblo de Puerto Rico por falta de pago de las contribuciones, y comprada por El Pueblo de Puerto Rico. Este último la arrendó a Juan Delgado, siendo éste y El Pueblo de Puerto Rico los demandados en este caso. La descripción de la parcela de 180 cuerdas, que lleva el número 4306, es como sigue:

"Un pedazo de terreno con cabida de 180 cuerdas más o menos, equivalentes a setenta hectáreas, setenta y cuatro áreas y setenta y dos centiáreas, radicado en el barrio de Tibes, lugar de San Patricio, de este término municipal, y se encuentra ese terreno bajo los puntos y colindancias siguientes: empezando en la boca de una quebrada que desagua en el río, que hace punto con Eusebio Martínez, colindando con éste hasta llegar a la altura donde está un árbol de guamá que hace punto con el citado Martínez, de allí siguiendo por la cuchilla hacia el poniente hasta llegar a un árbol de cucubano que está en la misma cuchilla y hace punto con Juan Laureano Velázquez, de allí siguiendo al sud, por el costado de Velázquez, hasta llegar a un padrón de emajagua que está en la orilla del río y hace punto con Velázquez y siguiendo aguas abajo hasta llegar a la boca de la quebrada donde empezó. Las colindancias por los cuatro puntos cardinales de esa finca son: por el Norte con la cuchilla que divide las jurisdicciones de Ponce y Utuado; por el sur con el río de San Patricio; por el este con finca de Eusebio Martínez, hoy de su sucesión y por el oeste con fincas de las sucesiones de Juan y José Laureano Velázquez."

Los representantes de El Pueblo de Puerto Rico, ya por indicación de Juan Delgado, o debido a la descripción errónea que se hizo, así como también por indicación de otros testigos, resolvieron que el lindero del este de esta finca, era la finca de

la Sucesión Joglar, no obstante el hecho de haberse declarado que dicho lindero era la finca de Eusebio Martínez, y de acuerdo con esta resolución pusieron al demandado Juan Delgado en posesión de los terrenos que actualmente se describen en la demanda. La prueba demuestra claramente que Ayala, Rivera y Joglar fueron las personas que sucesivamente poseyeron la finca que limitaba bien al este o al' oeste con la de Eusebio Martínez, o sea la finca No. 174.

Creemos que resulta con bastante claridad de la primitiva descripción de la finca No. 174 que la Sucesión Joglar, Ayala o Rivera, según sea el caso, se encuentra al este de dicha finca No. 174. Empezando en una piedra agujereada el primer costado del cuadrilátero próximo que se ha descrito, corre en dirección hacia el norte, haciendo punto con la finca de José Ayala como límite. No ha habido discusión alguna acerca de los linderos del norte y del sur. Estos son respectivamente la loma de Yauco y el río San Patricio. Cuando este primer costado del cuadrilátero descrito llega a la loma de Yauco allí termina. Después el otro costado se describe con dirección hacia el oeste. Si se coloca entonces la piedra hacia el lado sureste de la finca de Ayala—la que limita asimismo con la loma en la parte norte—cuando la línea divisoria llega a dicha loma, si el segundo costado ha de colocarse hacia el oeste como exije la descripción, iría con dirección a la finca del propio Ayala y no describiría una parcela de terreno independiente y limitando con Ayala. Para quitar de la finca de Ayala, la piedra tendría que colocarse en el ángulo suroeste de la finca de Ayala. Aparece bastante claro que al tratar de fijar los límites del este y del oeste con los nombres de los dueños de las fincas contiguas, el escribano confundió el este con el oeste.

Según se ha visto, Eusebio Martínez era el primitivo dueño de la finca No. 174 después que fué segregada de otra de mayor cabida. No solamente la descripción de la finca No. 4306—de la que El Pueblo de Puerto Rico alega tener el título de 180 cuerdas—coloca a Eusebio Martínez en el este, sino que la descripción de la finca de Ayala igualmente coloca a dicho

Martínez hacia el oeste.   Esta última descripción se encuentra igualmente en los autos, en la que aparece Ayala en posesión de una parcela de 150 cuerdas.

Los autos también muestran que las fincas No. 174 y 4306 eran subdivisiones de una parcela de terreno compuesta de 760 cuerdas y que pertenecía a Martínez y a Arce.   Hay también en el registro una certificación, en la que aparece con bastante claridad que la finca de Ayala—150 cuerdas—no formaba parte de la parcela de terreno de 760 cuerdas, sino que era la parcela que se encontraba mas al oeste de una parcela de 400 cuerdas que estaba situada al este de la finca de 760 cuerdas. Por tanto, no importa donde están colocadas las fincas Nos. 4306 y 174, dentro de los límites de la primitiva de 760 cuerdas, pues sería imposible colocar el terreno de Ayala entre ellas.

Hay además prueba que demuestra que cuando Ortiz embargó la finca No. 174, él inscribió su finca con los linderos del este y oeste cambiados en el registro de la propiedad, que Juan Delgado se encontraba presente y ayudó al márshal a determinar la finca.   Es también una circunstancia que favorece a la apelada, el hecho de haber efectuado el registrador la inscripción con el cambio de linderos.   El registrador tenía ante sí todas las primitivas escrituras.   Además, la declaración de Juan Príncipe Vázquez, de Carlos Clausell, así como la del anterior márshal Juan Oswaldo Príncipe que procedió a la ejecución del embargo a nombre de Ortiz, todas ellas colocan claramente a la finca No. 174 en el oeste y no en el este de Joglar o Ayala.   Es cierto que el márshal era pariente de Príncipe, pero esto no anuló el efecto probatorio de su declaración.   Hubo además un número bastante crecido de testigos que colocaron la finca al este de Joglar y quienes manifestaron que Eusebio Martínez nunca tuvo terrenos en el oeste del mismo.   El abogado de la apelada hace referencia a la explicación y motivos de estas declaraciones contradictorias, pero no es necesario que nosotros analicemos las declaraciones orales.   Si en realidad el caso necesitaba la prueba oral, el conflicto que hubo fué

☞ Véase la página 382.

resuelto por el juez sentenciador y no aparece de los autos que dicho juez al apreciar la referida prueba, estuviere influido por algún motivo o consideración indebidos. Por las razones expuestas debe confirmarse la sentencia.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, del Toro y Aldrey.