SECURITY INSURANCE COMPANY, peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE PONCE, HON. CARLOS BONAPARTE TORRENT y HON. ERICK E. KOLTHOFF, JUECES, demandados; MANHATTAN DAIRY, INC., interventora.

*Número:* O-71-236 *Resuelto:* 8 de febrero de 1973

*Polo, Rivera Mercado & Lasa,* abogados de la peticionaria;
*Héctor Lugo Bougal, Delia Lugo Bougal* y *Delia María
Auffant,* abogados de la interventora.

EL JUEZ ASOCIADO SEÑOR MARTÍNEZ MUÑOZ emitió la opinión
del tribunal.

El día 11 de mayo de 1967 ocurrió en una carretera del
Municipio de Ponce un choque entre una guagua de pasajeros
propiedad de la Oneida Star Bus Line y un vehículo de distri-
bución de leche perteneciente a la Manhattan Dairy Inc.
Resultaron lesionados en dicho suceso el conductor y varios
pasajeros de la guagua de la Oneida y el conductor de ve-
hículo de la Manhattan Dairy y el hermano de éste, que lo
acompañaba en ese momento. También resultaron abollados
ambos vehículos y destruidas muchas botellas de leche en el
vehículo de la Manhattan Dairy.

Tanto la Oneida como la Manhattan Dairy tenían en
vigor a la fecha del accidente sendas pólizas de seguro de
responsabilidad pública cubriendo el riesgo de accidentes como
éste. La Oneida tenía un póliza con la Insurance Company of
North America con cubierta máxima de $5,000 por lesiones
a una persona, $10,000 por accidente y $5,000 por daños a la
propiedad ajena; la póliza de la Manhattan Dairy era con la
peticionaria Security Insurance Co. con cubierta máxima de
$100,000 por persona, $300,000 por accidente y $10,000 por
daños a la propiedad.

Con motivo del accidente se radicaron en el Tribunal Su-
perior, Sala de Ponce, cinco demandas reclamando daños.
Tres demandas envolvían los pasajeros de la Oneida. En estos
tres casos la acción fue dirigida contra los dueños de los dos
vehículos envueltos y sus respectivas aseguradoras.

Un caso envolvía la acción del conductor Ángel Cruz Padua
de la Oneida por lesiones sufridas. La demanda en este caso
iba dirigida contra la Manhattan y su compañía aseguradora.

Por último, el otro caso envolvía la reclamación de Manhattan por daños a su propiedad; la del conductor de Manhattan, Miguel A. Ortiz, por lesiones sufridas; y la de su hermano, Teófilo Ortiz, quien lo acompañaba, también por lesiones sufridas. Esta acción fue dirigida únicamente contra la Oneida Star Bus Line y su aseguradora Insurance Co. of North America.

En los tres casos de los pasajeros de la Oneida, la Oneida Star Bus Line y su aseguradora radicaron demanda contra coparte contra la Manhattan Dairy, reclamando todo o parte de lo que pudiesen deberle dichos demandantes contra coparte a los damnificados en el accidente. Otro tanto hicieron la Manhattan Dairy y su aseguradora, reclamándole en demanda contra coparte a la Oneida Star Bus Line toda o parte de la suma a que viniesen obligadas las demandantes contra coparte a satisfacer a los demandantes, alegando que el accidente se debió a la negligencia exclusiva o conjunta del conductor de la Oneida.

Los cinco casos fueron consolidados "para fines de juicio." En 24 de abril de 1970 el tribunal, luego de un juicio, dictó una Opinión y Sentencia fijando, entre otras determinaciones, la cuantía de daños sufridos por los pasajeros de la Oneida.

Notificada que fue la sentencia, la Security Insurance Co., aquí peticionaria, presentó una "Moción Aclaratoria" en la cual le informaba al tribunal, con copia a todas las partes, que la Security había estipulado, con los pasajeros de la guagua de la Oneida que la habían demandado, la cuantía de los daños sufridos por dichos pasajeros y sus familiares codemandantes en la suma total de $18,500.00. Como consecuencia de ello, la Security accedía a que el tribunal dictase sentencia con respecto a dichas partes distribuida dicha suma en la forma convenida que indicó. También aclaraba la Security en dicha moción que el pleito de la Security contra la Oneida y la Insurance Company of North America continuaba, para de-

terminar la responsabilidad respectiva de los codemandados. La moción decía además lo siguiente:

"A la luz de la susodicha estipulación, Security Insurance Company viene obligada a satisfacer la suma de $18,500.00 según fuera estipulado, y participar proporcionalmente y a prorrata en el límite de la póliza de la Insurance Company of North America, con los otros demandantes beneficiados por la sentencia y con derechos adquiridos sobre dicha póliza."

Al poco tiempo la peticionaria radicó en el tribunal sentenciador un "Escrito de Consignación", haciendo referencia a la estipulación ya mencionada y acompañando un cheque por $18,500 a nombre del Secretario del Tribunal y a la disposición de los demandantes que habían intervenido en la estipulación.

Con posterioridad a la consignación, el Tribunal a quo dictó una "Opinión y Sentencia Enmendada", en la que concluye que el accidente se debió a la negligencia concurrente de ambos conductores, en proporción de 75% por parte del conductor de la Oneida y 25% por parte del conductor de la Manhattan Dairy. En la parte dispositiva, el tribunal hace una lista de los damnificados-demandantes—entre los cuales enumera a la Manhattan Dairy, el conductor de la Manhattan, el hermano de dicho conductor y el conductor de la Oneida—y la cuantía de los daños sufridos por cada uno, según la prueba, declarando con lugar las demandas y haciendo solidariamente responsables frente a dichos demandantes a Efigenio Román (propietario de la Oneida), Oneida Star Bus Line, Insurance Company of North America, Manhattan Dairy, Inc. y Security Insurance Co. También se declaró sin lugar la demanda contra coparte de la Oneida contra la Manhattan Dairy. Nada se dijo o dispuso con relación a la demanda contra coparte de la Manhattan Dairy y la Security Insurance Co. contra la Oneida y la aseguradora de ésta.

Pocos días después de notificada la Sentencia Enmendada, la Insurance Company of North America, aseguradora de la

Oneida, consignó en el tribunal $10;000, que constituye el límite máximo de su responsabilidad por el accidente por concepto de daños personales y, luego, la suma adjudicada a favor de la Manhattan por daños a la propiedad y honorarios de abogado. Días más tarde la Security Insurance Co. radicó una "Moción de Retiro" en la que pedía que le pagasen, de los fondos consignados por la otra aseguradora, la cantidad que le correspondía al dividir los $10,000 en partes proporcionales a sus créditos entre la Security, Miguel A. Ortiz (conductor de la Manhattan) y Teófilo Ortiz (hermano del conductor).

De acuerdo con sus cómputos, la Security reclamaba en ese concepto $6,230 de los fondos consignados. Los abogados de los hermanos Ortiz (que eran los mismos abogados de la Manhattan Dairy) se opusieron a la moción de retiro, invocando aquella parte de la sentencia que responsabilizaba a la Security frente a ellos. El tribunal dictó resolución denegando la moción de retiro y ordenando a la Security a pagar la cantidad que por sentencia le adeuda a la Manhattan Dairy y a los hermanos Ortiz "dentro de un término de diez (10) días". Radicó entonces la Security una moción de reconsideración que fue denegada después de haber nosotros expedido el auto de *certiorari*.

En el recurso la Security alega error en la sentencia y en la resolución del tribunal inferior consistentes en habérsele responsabilizado frente a la Manhattan Dairy (su propia asegurada) y a los hermanos Ortiz (uno de los cuales, el conductor, era también su asegurado), a pesar de que nunca fue demandada ni hecha reclamación alguna en el pleito por parte de éstos; y en habérsele negado participación en los fondos consignados por la Insurance Co. of North America a pesar de su derecho a contribución contra ésta.

■ El primer error levantado por la Security no podía ser más obvio, puesto que los interventores (Manhattan y los hermanos Ortiz) no radicaron demanda ni otro tipo de reclamación, durante el pleito, contra la peticionaria. Los interven-

tores reconocen ante nos que en este particular la sentencia estuvo equivocada. El tribunal recurrido, a pesar de que, según sus propias palabras, consolidó los casos sólo "para fines de juicio", se confundió al momento de dictar sentencia y dividió a todas las partes de los cinco distintos pleitos en dos bandos: los damnificados en el accidente y los responsables por dichos daños, sin advertir que no todos los responsables lo eran frente a todos los damnificados.

De hecho, la sentencia enmendada adolece de otros errores similares al que nos ocupa. Por ejemplo, la sentencia responsabiliza: (a) a la Manhattan Dairy, frente a sí misma y (b) a la Oneida y su aseguradora, frente al conductor Ángel Cruz Padua, que no había hecho y probablemente no tenía reclamación alguna contra dichas partes. Estos errores se refieren a la *sentencia* y habremos de subsanarlos al disponer finalmente del recurso ante nos. Las siguientes controversias giran en torno a la *resolución* posterior que deniega la moción de retiro de la peticionaria.

## I

¿Tiene derecho la peticionaria a exigir que la Insurance Co. of North America contribuya proporcionalmente en lo pagado por la peticionaria a los pasajeros damnificados de la Oneida?

■ En Puerto Rico existe el llamado derecho a *"contribución"* entre los que por su negligencia concurrente fueron cocausantes de un daño. *García* v. *Gobierno de la Capital*, 72 D.P.R. 138 (1951); *Serralta* v. *Martínez Rivera*, 97 D.P.R. 466, 470 (1969); *Merle* v. *West Bend Co.*, 97 D.P.R. 403, 405 (1969); *Torres* v. *A.M.A.*, 91 D.P.R. 714, 717 (1965); *Marcano Torres* v. *Fuentes Fluviales*, 91 D.P.R. 654, 659 (1965); *Cortijo Walker* v. *Fuentes Fluviales*, 91 D.P.R. 574, 581 (1964); véase *Díaz Bonilla* v. *Tribunal Superior*, 98 D.P.R. 49 (1969). Al llegar a esta conclusión en el caso de *García* v. *Gobierno de la Capital*, supra, descansamos en el

Art. 1098 del Código Civil, 31 L.P.R.A. 3109, el cual permite que el deudor solidario que pagó más de lo que correspondía pueda reclamar las porciones correspondientes a los demás codeudores solidarios. Esta es la acción que llaman los tratadistas españoles "nivelación", (¹) "derecho de regreso" (²) y otros nombres similares.

■ El derecho a contribución o nivelación surge en· el momento en que se hace el pago por uno de los codeudores en una proporción mayor a la que le correspondía frente a los demás codeudores. Esto se desprende del propio Art. 1098 y del caso de *García* v. *Gobierno de la Capital*, supra; véase también Prosser, *Law of Torts*, ed. 1971, pág. 309. Claro está, eso no impide que se entable una reclamación contingente por parte de un codeudor que sea demandado por el acreedor, para hacer valer su derecho a contribución en caso de que se le condene a pagar la deuda completa al acreedor. *García* v. *Gobierno de la Capital*, supra, págs. 147–148.

De acuerdo con las determinaciones de hecho del juez a quo, ·el accidente que ocasionó los daños que se reclaman fue ocasionado por la negligencia concurrente de los conductores de ambos vehículos. En virtud de ello, la peticionaria Security Insurance Co. resultaba ser una de varios codeudores solidarios frente a los pasajeros de la guagua de la Oneida y los familiares de éstos que obtuvieron sentencia a su favor. No así frente a la Manhattan Dairy y los hermanos Ortiz, puesto que éstos, como hemos visto, no demandaron a la Security y es, por tanto, errónea aquella parte de la sentencia enmendada que establece ese vínculo obligatorio.

La peticionaria pagó a los pasajeros de la guagua ·de la Oneida y los familiares de éstos que obtuvieron sentencia a su

---

(¹) Puig Brutau, *Fundamentos de Derecho Civil*, tomo I, vol. 2 (ed. 1959), pág. 199.

(²) Puig Brutau, obra citada, pág. 198 (citando a Pérez y Alquer); Hernández Gil, *"La solidaridad en las obligaciones"*, 30 Revista de D. P. 397 (1946).

favor la totalidad de los daños a que tenían derecho esas partes, ya por estipulación o por sentencia (pues ambas coincidieron en la cuantía de daños).(³)

Como había otros deudores solidarios, al hacer el pago la peticionaria se hizo acreedora a contribución por parte de éstos.

Señala Prosser, obra citada, a la pág. 308, que hay aceptación general de la doctrina, la que aquí adoptamos, de que, si existe el derecho a contribución entre los cocausantes de un daño, ese derecho procede a favor de un asegurador por responsabilidad pública que ha pagado la totalidad de los daños sufridos por el demandante. *Hawkeye Security Ins. Co.* v. *Ford Motor Co.*, 174 N.W.2d 672 (Iowa, 1970); *Hudgins* v. *Jones*, 138 S.E.2d 16 (Va. 1964); *National Farmers Union Property and Cas Co.* v. *Fisher*, 284 F.2d 421 (8th Cir. 1960); *Hawkeye Security Ins. Co.* v. *Lowe Const. Co.*, 99 N.W.2d 421 (Iowa 1959); *M.F.A. Mutual Ins. Co.* v. *Mullin*, 156 F.Supp. 445 (W.D. Ark. 1957); *Underwriters at Lloyds of Minneapolis* v. *Smith*, 208 N.W. 13 (Minn. 1926). Este derecho de la aseguradora de un cocausante del daño puede hacerlo valer contra la aseguradora de otro cocausante del daño. *Carolina Casualty Ins. Co.* v. *Oregon Auto Ins. Co.*, 408 P.2d 198 (Ore. 1965); *Bielski* v. *Schulze*, 114 N.W.2d 105 (Wis. 1962); *Hobbs* v. *Buckeye Union Casualty Co.*, 212 F.Supp. 349, 351 (W.D. Va. 1962); *State* v. *McMilian*, 349 S.W.2d 453 (Mo. 1961); *American Employer's Ins. Co.* v. *Maryland Casualty Co.*, 219 F.2d 335 (4th Cir. 1954); *State Farm Mut. Auto. Ins. Co.* v. *Continental Cas. Co.*, 59 N.W.2d 425 (Wis. 1953); *De Brue* v. *Frank*, 251 N.W. 494 (Wis. 1933).

---

(³) Si se suman las cantidades adjudicadas por la Sentencia Enmendada a los pasajeros de la guagua de la Oneida y sus familiares( págs. 16–17 de la Sentencia Enmendada), vemos que arrojan el mismo total que la estipulación hecha entre la peticionaria y esas personas (pág. 1 de la Moción Aclaratoria).

Claro está, la peticionaria también podría, aunque no se plantea aquí, pedir contribución del conductor de la guagua de la Oneida y de la misma Oneida. No podría pedir contribución de su asegurada, la Manhattan Dairy, ni del conductor de ésta, por la naturaleza del contrato de seguro y las cláusulas que normalmente contiene, pero tampoco se plantea esto en esta ocasión.

## II

Determinado ya que la peticionaria tiene y ejercitó el derecho a pedir contribución de parte de la otra aseguradora, se plantea la cuestión de si existe alguna preferencia entre el derecho de la peticionaria y los de los demás acreedores por sentencia en cuanto a los fondos consignados por la Insurance Co. of North America. Los acreedores son los hermanos Ortiz con un crédito de $2,250 a favor de Miguel A. Ortiz, el conductor de la Manhattan, y de $9,000 a favor de su hermano Teófilo Ortiz Cruz. La Manhattan, como hemos visto, ya cobró su crédito por daños a su vehículo, etc., de la otra compañía aseguradora y, por tanto, no reclama interés alguno sobre los diez mil dólares consignados.

Esta controversia no ha sido planteada en forma clara por las partes. El esfuerzo de las partes se ha limitado a exponer los hechos y a pedir remedios de acuerdo con sus respectivos intereses, sin referencia alguna a normas de ley, jurisprudencia o autoridades, lo que ha hecho más ardua la labor de búsqueda del Tribunal.

Los interventores insisten que su crédito fue reconocido por sentencia y no así el de la peticionaria, lo que, como veremos, es crucial para la prioridad de sus créditos.

■ Se trata de un conflicto entre distintos acreedores de un deudor común, interesando aquéllos satisfacer su crédito de ciertos fondos del deudor que son insuficientes para satisfacerlos a ambos, debido al límite de la póliza.

El derecho aplicable a este tipo de conflicto entre acreedores se encuentra en los Capítulos II y III del Título XVII del Libro Cuarto del Código Civil, referentes a clasificación y prelación de créditos. (⁴) Dichos capítulos detallan una serie de casos específicos en que el legislador consideró justo o conveniente que ciertos acreedores cobrasen antes que otros, dependiendo del origen del crédito. La regla general en este asunto la encontramos en el Art. 1825, 31 L.P.R.A. sec. 5195:

"*Créditos que no gozan de preferencia*

"No gozarán de preferencia los créditos de cualquiera otra clase, o por cualquier otro título, no comprendidos en las secciones anteriores."

Cuando concurren al cobro varios acreedores de un deudor común, es regla general que todos cobrarán en igualdad de condiciones, a prorrata según la cuantía de sus respectivos créditos. Manresa, *Comentarios al Código Civil Español*, ed. 1951, tomo XII, págs. 762–763. Scaevola, *Código Civil*, ed. 1961, tomo XXXI, págs. 681–682. Sólo se saldrán de esa regla los créditos a los cuales el Código les reconoce preferencia o prelación.

Una de las disposiciones contenidas en estos capítulos (Art. 1824, 31 L.P.R.A. 5194) dice lo siguiente:

"Con relación a los demás bienes muebles e inmuebles del deudor, gozan de preferencia:

. . . . . . . .

"4. Los créditos que sin privilegio especial consten:
 (a) En escritura pública

---

(⁴) En *Herederos de Garriga* v. *O'Meara & Cía.*, 28 D.P.R. 357, 360 (1920), se resolvió que estas disposiciones, aunque fueron diseñadas principalmente para usarse en procedimientos de quiebra de los que fueron dejados sin vigencia por la Ley de Quiebras federal, son aplicables en pleitos como. éste, "en que, sin tratarse de una quiebra, surge un conflicto entre ciudadanos con respecto a su mejor derecho a hacer efectivo sus créditos en determinados bienes de un deudor común." Citado favorablemente en *P.R. Bedding Mfg. Corp.* v. *Herger*, 91 D.P.R. 519 (1964); *A. Méndez & Hno.* v. *Chavier*, 39 D.P.R. 731 (1929); *Trueba* v. *Zalduondo*, 34 D.P.R. 743 (1925); *Hernández* v. *Corte de Distrito*, 34 D.P.R. 679 (1925).

(b) Por sentencia firme, si hubiesen sido objeto de litigio. "Estos créditos tendrán preferencia entre sí por el orden de antigüedad de las fechas de las escrituras y de las sentencias." No parece haber ninguna otra disposición de la que surja preferencia a favor de ninguna de las partes.

◼ La citada disposición favorece la posición de los interventores. Tienen ellos una sentencia a su favor. La peticionaria reclamó su derecho a contribución dentro del mismo pleito en que se estableció su responsabilidad. Pero el juez a quo no emitió una decisión sobre ello. La peticionaria sostiene que el tribunal sentenciador cometió un error *de forma* al no decidir la mencionada demanda contra coparte junto con las demás reclamaciones en el caso. Si no se considera que la omisión del juez a quo constituyó un error de forma, el articulado sobre prelación de créditos en el Código Civil favorecería a los interventores a costa de la peticionaria. Pero si la omisión del juez a quo fue un error de forma las consecuencias serían favorables a la peticionaria, ya que tanto bajo la jurisprudencia de Puerto Rico como bajo la doctrina americana el error de forma es subsanable mediante una enmienda *nunc pro tunc* dándosele efecto retroactivo a la enmienda con fecha de la sentencia o resolución original. *Shaw* v. *Rodríguez*, 24 D.P.R. 871 (1917); *Martínez* v. *Delgado*, 18 D.P.R. 382 (1911); *cf. Martínez* v. *Tribunal Superior*, 83 D.P.R. 717, 723, nota al calce núm. 4 (1961); *Banco Popular* v. *Tribunal Superior*, 82 D.P.R. 242, 246 (1961); Hernández Colón, *Manual de Derecho Procesal Civil*, ed. 1969, pág. 276; 21 C.J.S. 422 *et seq.*; 46 Am.Jur.2d 432 *et seq.* Este efecto retroactivo de la corrección colocaría a la peticionaria en igualdad de orden para cobrar con los interventores de los diez mil dólares consignados.

III

¿Constituye un error de forma la omisión del juez recurrido en no haber emitido una decisión sobre la demanda contra coparte de la peticionaria?

■ Las conclusiones de hecho y de derecho de la sala sentenciadora bastan para reconocer el derecho de contribución reclamado por la peticionaria en caso de que ésta pagase a los pasajeros de la guagua de la Oneida la totalidad de los daños, como en efecto lo hizo. Fue erróneo, por tanto, el que el trimunal no emitiera una decisión que se imponía sobre esta controversia puesto que le fue planteada debidamente y el Art. 7 del Código Civil(⁵) impone a los jueces el deber de decidir todos los casos que se le plantean.

■ En Puerto Rico hemos actuado con liberalidad en la aplicación de la doctrina en torno a la subsanación o corrección de errores incurridos por inadvertencia u omisión. La fuente básica para la aplicación de esta doctrina es actualmente la Regla 49.1 de las de Procedimiento Civil. Dice así:

"*Errores de forma*

"Los errores de forma en las sentencias, órdenes, u otras partes del expediente y los que aparezcan en las mismas por inadvertencia u omisión, podrán corregirse por el tribunal en cualquier tiempo, a su propia iniciativa, o a moción de cualquier parte, previa notificación, si ésta se ordenare. Durante la tramitación de una apelación, podrán corregirse dichos errores antes de elevar el expediente al tribunal de apelación, y posteriormente, sólo podrán corregirse con el permiso del tribunal de apelación."

■ Independientemente de esa fuente, en varias ocasiones hemos hecho reconocimiento de la facultad inherente que tienen los tribunales de corregir los errores de forma que aparezcan de sus récords. *Sucn. Rosario* v. *Sucn. Cortijo,* 83 D.P.R. 678 (1961); *González* v. *Santini & Co.,* 26 D.P.R. 553 (1918). Véase Cappali, *"Rule 49 Relief: The Last Refuge of Sinner and Saint",* 40 Rev. Jur. U.P.R., 145, 156 (1971). Este poder se ha usado para corregir errores del secretario

---

(⁵) Dice el primer párrafo de dicho artículo:
"El tribunal que rehuse fallar a pretexto de silencio, obscuridad, o insuficiencia de la ley, o por cualquier otro motivo, incurrirá en responsabilidad."

del tribunal al anotar la sentencia. *Pueblo* v. *Miranda*, 56
D.P.R. 601 (1940). (⁶) También la hemos usado para añadirle
a una sentencia remedios adicionales que se deriven del
remedio concedido originalmente. Por ejemplo, añadir la
concesión de intereses cuando la sentencia original
condenaba al pago de una cantidad principal. *Concepción*
v. *Latoni*, 63 D.P.R. 693 (1944), revocado por otros
motivos en *Zequeira* v. *C.R.U.V.*, 95 D.P.R. 738, 744 (1968);
*Shaw* v. *Rodríguez*, supra. Al reconocimiento del derecho
de propiedad se le ha adicionado *nunc pro tunc* la condena
de entregar los frutos, *Martínez* v. *Delgado*, supra, y el
decreto de un auto posesorio, *Cintrón* v. *A. Hartman & Co.*,
43 D.P.R. 179 (1932). A la desestimación de una tercería se
le ha añadido posteriormente la condena a pagar lo percibido
por el tercerista en la venta de ciertos bienes tomados en
posesión por éste durante el procedimiento, *González* v. *Santini
& Co.*, supra. Para dar una descripción completa en la sen-
tencia de la propiedad disputada, *Cintrón* v. *A. Hartman &
Co.*, supra; para conceder costas en la sentencia cuando
éstas se reconocen en la opinión, *Lawton* v. *Rodríguez*, 41
D.P.R. 447 (1930); para eliminar de la sentencia a un
codemandado que no fue emplazado, *Bennett* v. *Boschetti*, 31
D.P.R. 855 (1923); para dejar sin efecto el archivo erróneo
de un caso bajo la Regla 11 de Administración del Tribunal
de Primera Instancia, *Sucn. Rosario* v. *Sucn. Cortijo*, supra.
En *Insurance Co. of P.R.* v. *Tribunal Superior*, 100 D.P.R.
405 (1972), consideramos que era un error de forma, corre-
gible bajo la Regla 49.1, la omisión de conceder intereses
desde la interposición de la demanda cuando de la sentencia
surgía, implícitamente, la temeridad de la parte perdidosa,
toda vez que fue condenada a pagar honorarios de abogado.

---

(⁶) Aunque el caso citado es de naturaleza criminal, el principio es el
mismo pues los errores se cometen no importa la naturaleza del caso y, en
unos y otros, la facultad inherente de los tribunales para corregirlos sigue
siendo la misma. En el procedimiento criminal, véase la Regla 185(b) la
que equivale a la Regla 49.1 en el procedimiento civil.

Allí sostuvimos que la cuestión envuelta no es una de derecho sustantivo, sino que era una mera omisión o inadvertencia de las cubiertas por la Regla 49.1.

"No se cometió el error. Dispone la Regla 49.1 de las de Procedimiento Civil que los errores que aparezcan en las sentencias 'por inadvertencia u omisión, podrán corregirse por el tribunal *en cualquier tiempo,* a su propia iniciativa, o a moción de cualquier parte.' (Énfasis nuestro.)

La situación del caso presente es distinta a la del caso *Banco Popular* v. *Tribunal Superior,* supra. Allí se dijo que la Regla 60 de las del año 1943, equivalente a la actual Regla 49.1, no era de aplicación a dicho caso pues el error corregido no era un mero error clerical o una inadvertencia u omisión del Juez, sino que lo que estaba ante él era un problema de derecho que envolvía la interpretación de varios incisos del artículo 8 de la Ley de Alquileres Razonables."

El profesor Capalli, en su artículo citado antes, señala que, en términos generales, si el derecho a cierto remedio está claramente sostenido por el récord, la omisión en concederlo es subsanable, por ser error de forma, mediante enmienda *nunc pro tunc* añadiéndolo.

Para nosotros resulta obvio, según surge de las conclusiones de hecho y de derecho, ([7]) el derecho de contribución de la peti-

---

([7]) De las conclusiones del tribunal pertinentes a esta cuestión, copiamos las siguientes:

Conclusión de Hecho Núm. 17:

"17. La negligencia del conductor Ángel Cruz Padua consistió en irrumpir en la Avenida By-Pass, sin ceder el paso a la guagua de la Manhattan Dairy, Inc., a quien vio aproximarse a gran velocidad, cruzando en forma diagonal en dirección contraria al tránsito, con el objeto de ganar acceso a la otra vía. La negligencia del conductor Ángel Cruz Padua es imputable a su patrono Epifanio Román y a la aseguradora Insurance Company of North America."

Conclusiones de Derecho Núms. 8 y 15:

"8. Este Tribunal concluye, como cuestión de derecho, que el conductor de la Oneida Star Bus Line, Ángel Cruz Padua, incurrió en negligencia, falta de cuidado y circunspección al conducir su vehículo en contra del tránsito, conducta que fue la causa principal del accidente descrito y los daños provenientes del mismo, siendo tal conducta imputable a su patrono Epifanio Román y a la codemandada Insurance Company of North America,

cionaria, invocado en su demanda contra coparte. Fue una inadvertencia o error de forma del tribunal a quo no incluirlo en la parte dispositiva de la sentencia. De la faz de dichas conclusiones surge el derecho incuestionable de la peticionaria a que se le reconozca y añada en la sentencia mediante enmienda *nunc pro tunc*.

## IV

¿En qué proporción se fijará la contribución a que tiene derecho la peticionaria? Básicamente se trata de si la porción de la deuda que en última instancia han de soportar los responsables del daño ha de ser a partes iguales o si ha de ser proporcional a la negligencia en que incurrieron los conductores causantes del daño.

En este caso hubo una determinación de hecho del juez de instancia de que el accidente se debió a la negligencia concurrente de los dos conductores, aportada en un 75% por el conductor de la guagua de la Oneida y 25% por el conductor de la Manhattan Dairy. ¿Deberá distribuirse la responsabilidad basándose en esas proporciones o se hará a partes iguales entre los dos cocausantes (y en última instancia por sus aseguradoras, hasta el límite de las respectivas pólizas)?

Sobre este particular señala Prosser que la mayoría de las jurisdicciones que reconocen el derecho a contribución entre los cocausantes de un daño siguen la norma de que "en la igualdad está la equidad" (*equality is equity*); es decir, lo justo es repartir el efecto oneroso por partes iguales entre los cocausantes, sin tomar en cuenta gradaciones de negligencia entre ellos. Pero hay también algunas jurisdicciones que por

quienes vienen obligados a responder solidariamente por los daños sufridos por los demandantes."

"15. A tenor con la ley y las reglas jurisprudenciales antes citadas, este Tribunal concluye como cuestión de derecho que la negligencia en este caso fue aportada en un 75% por el conductor Ángel Cruz Padua, de la Oneida Star Bus Line, Inc. y en un 25% por el conductor de la Manhattan Dairy, Inc. Miguel Ángel Ortiz."

ley o por jurisprudencia han establecido la norma de que se distribuirá el efecto oneroso entre los cocausantes en proporción a sus respectivas negligencias. Prosser, obra citada, pág. 310.

Apoyando la doctrina de las "cuotas iguales" tenemos, entre otros, los siguientes casos; *Early Settlers, Ins. Co.* v. *Schweid*, 221 A.2d 920 (D.C. Court of Appeals, 1966); *Warner* v. *Capital Transit Co.*, 162 F.Supp. 253 (USDC for D.C. 1958); *Russell* v. *United States*, 113 F.Supp. 353 (USDC for M.D. Penna. 1953); *Consolidated Coach Corp.* v. *Burge*, 54 S.W.2d 16 (Ky. 1932).

En cambio, la doctrina de "cuotas proporcionales a la negligencia" ha sido utilizada en *Peiffer* v. *Allstate Ins. Co.*, 187 N.W.2d 182 (Wis. 1971); *Packard* v. *Whitten*, 274 A.2d 169 (Me. 1971); *Gomes* v. *Bradhurst*, 394 F.2d 465 (3rd Cir. 1968; aplicando derecho de Islas Vírgenes); *Cattaro* v. *Northwest Airlines, Inc.*, 236 F.Supp. 889 (E.D. Va. 1964); *Pierringer* v. *Hoger*, 124 N.W.2d 106 (Wis. 1963); *Longberg* v. *H. L. Green Co.*, 114 N.W.2d 435 (Wis. 1962); *Bielski* v. *Schulze*, supra; *Mitchell* v. *Branch*, 363 P.2d 969 (Hawaii 1961); *Schultz* v. *Young*, 169 S.W.2d 648 (Ark. 1943).

En España, no parecen haberse elaborado en detalle las normas relativas a la responsabilidad de los cocausantes de un daño. No obstante, parece haber quedado establecido que en el caso de cocausantes de un daño que sea además una falta penal, los cocausantes responderán solidariamente al perjudicado y el tribunal fijará la proporción por la que cada cocausante responderá frente a los demás. Al efecto citan algunos comentaristas al Art. 106 del Código penal español; [8] Santos Briz, *Derecho de Daños*, ed. 1963, pág. 291; Reyes Monterreal, *Acción y Responsabilidad Civil Derivadas de Delitos y Faltas*, ed. 1958, pág. 65. Hay sentencias que apoyan esta conclusión; 24 de abril de 1958; 3 de febrero de 1958. Véase Rodríguez

---

[8] "En el caso de ser dos o más los responsables civilmente de un delito o falta los tribunales señalarán la cuota de que deba responder cada uno."

Navarro, *Doctrina Penal del Tribunal Supremo*, ed. 1959, tomo I, págs. 1972–1977.

 En la relación interna entre cocausantes de un daño, al fijar la proporción que en contribución o repetición tiene un cocausante contra el otro, nos parece más justa y razonable la norma que establece que el efecto oneroso entre los cocausantes debe distribuirse en proporción a sus respectivas negligencias. Como se señala en la opinión en *Bielski* v. *Schulze*, supra, a la pág. 109, en la que se estableció dicha doctrina en el Estado de Wisconsin (donde existe el derecho a contribución y, además, la norma de negligencia comparada), el repartir la carga económica del daño entre los cocausantes según sus distintos grados de negligencia sería una aplicación concreta, un refinamiento que se acercaría más a la equidad absoluta. (⁹)

"Si la doctrina lo que persigue es la equidad, no hay razón lógica o de justicia natural por la cual la distribución de responsabilidad común entre los cocausantes del daño no deba corresponder con los porcentajes de negligencia causal que concurrieron para ocasionar el daño. Esto es meramente un refinamiento del principio de equidad. Es difícil justificar dentro del sentido de justicia de un lego o de la justicia natural, por qué un cocausante que resulta ser 5% negligente deba recobrar sólo el 50% de la suma que él pagó al demandante del cocausante que incurrió en un 95% de negligencia, y a la inversa, por qué un demandado que es 5% negligente se le requiera que pague el 50% de la pérdida por vía de reembolso al cocausante que fue 95% negligente."

En conclusión resolvemos lo siguiente:

(a) La sentencia es errónea en cuanto condena a la Security

---

(⁹) Merece dejar claro que no estamos considerando, por no estar planteada en este caso, si bajo la norma de negligencia comparada que prevalece en nuestra jurisdicción, la responsabilidad de un cocausante del daño frente a una víctima inocente, debe continuar siendo solidaria con los otros cocausantes, cuando los grados de negligencia fijados a éstos no son iguales. *Serralta* v. *Martínez Rivera*, 97 D.P.R. 466, 471 (1969) y casos allí citados.

Insurance Co. a pagar a la Manhattan Dairy y a Miguel y Teófilo Ortiz los daños sufridos por éstos. Esto lo admiten estas últimas partes, que intervinieron en este recurso, y resulta así porque la Security no fue demandada por los interventores.

(b) La Security Insurance Co. tiene derecho a exigir contribución por parte de la Insurance Co. of North America, puesto que la Security reclamó dicho derecho y pagó a los acreedores comunes de ambas la totalidad de la obligación, lo que hace a la Security acreedora a la contribución o repetición.

(c) El derecho a contribución que tiene la Security Insurance Co. es proporcional a la negligencia en que incurrió el conductor de la guagua de pasajeros imputable a la Oneida Bus Line y a su aseguradora Insurance Company of North America, es decir, un 75% de los $18,500 que pagó a los acreedores comunes de ambas. Su crédito asciende, pues, a la suma de $13,875.00.

(d) La peticionaria Security Insurance Co. tiene derecho a concurrir con los hermanos Ortiz en el cobro de su crédito en igualdad de condiciones, a prorrata, según la cuantía de los respectivos créditos de aquéllos, contra los fondos montantes a $10,000 consignados por la Insurance Company of North America.

*Se dictará sentencia de conformidad con lo antes expuesto.*