SUCESIÓN DE FRANCISCO ROSARIO, ETC., demandantes y recurridos *v.* SUCESIÓN DE MONSERRATE CORTIJO, ETC., demandados y recurrentes.

Número: 12363. Resuelto: 6 de octubre de 1961.

*Brown, Newsom & Córdova; Fiddler, González, Guillemard y Rodríguez; R. Martínez Álvarez, Jr.* y *Francisco Abreu Castillo,* abogados de los recurrentes; *Luis R. Colón Martínez,* abogado de los recurridos.

Sala integrada por el Juez Asociado señor Hernández Matos, como Presidente de Sala, y los Jueces Asociados señores Blanco Lugo y Dávila.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

En enero de 1951 se inició ante el Tribunal Superior, Sala de San Juan, una acción de naturaleza reivindicatoria por alrededor de cuarenta y nueve demandantes, que eran miembros de unas sucesiones cuyo tronco común era Francisco Rosario. Se incluyeron como partes demandadas cerca de cuarenta y cinco personas, miembros también de varias sucesiones. Luego de ciertos trámites preliminares, en 24 de febrero de 1954 se dictó una orden autorizando el emplazamiento mediante edictos de un gran número de demandados que no habían podido ser citados personalmente. En 4 de mayo siguiente tuvo lugar una conferencia preliminar entre las partes, y como resultado de la misma, se le concedió a la parte demandante un término de diez días para comenzar la publicación de los edictos. La orden corespondiente fue notificada en 10 de mayo.

En 8 de noviembre, y a tenor de las disposiciones de la Regla 11 de las de Administración del Tribunal de Primera Instancia,[1] el Juez Administrador de dicho Tribunal dictó una orden requiriendo a las partes para que dentro del término de diez días expusieran las razones por las cuales no procedía la desestimación y archivo del pleito, por aparecer de los autos que durante los últimos seis meses no se había efectuado trámite alguno por ninguna de las partes. Obsérvese que para esta fecha no habían transcurrido seis meses

---

[1] La Regla 11 citada (4 L.P.R.A., Ap. II, R. II, pág. 1005) dispone que:

"El juez administrador desestimará todos los asuntos civiles pendientes en los cuales no se hubiere efectuado trámite alguno por cualquiera de las partes durante los últimos seis meses, a menos que tal inactividad se le justifique oportunamente. Mociones sobre suspensión o transferencia de vista o de prórroga no serán consideradas como un trámite a los fines de esta regla.

"Dentro de los primeros cinco (5) días de cada mes el juez administrador dictará una orden en todos dichos casos requiriendo a las partes para que dentro del término de diez (10) días de su notificación por el secretario expongan por escrito las razones por las cuales no deba desestimarse el asunto."

desde la notificación de la orden que concedió un término de diez días para comenzar la publicación de los edictos.

En 26 de noviembre de 1954 se dictó una sentencia decretando el archivo y sobreseimiento del pleito, ya que las partes no comparecieron a justificar su inactividad.

En 24 de febrero de 1955 la parte demandante solicitó se dejara sin efecto dicha sentencia mediante una moción jurada, en la cual se exponían, entre otros, los siguientes hechos:

"Los demandantes estaban publicando los edictos expedidos por este Tribunal, durante el tiempo concedido y prueba de ello es que se publicó en el Imparcial de Puerto Rico la notificación, o edictos en este caso durante los meses de mayo y junio de 1954, en sus ediciones del 2, 9, 16 y 23 de mayo y primero de junio de 1954.

"Los demandantes en este pleito son personas insolventes y carecen de recursos y medios y para pagar los sesenticuatro dollars costo de la publicación de dichos edictos, los demandantes tuvieron que esperar hasta el mes de Febrero de 1955, fecha en que pudieran obtener el dinero mediante un préstamo que obtuvo la demandante, o una de las demandantes, Aurelia Rosario Cortijo."

A esta moción se acompañó una declaración del administrador del periódico El Imparcial, que se publica en esta ciudad, en la cual se hacía constar que los edictos habían aparecido en las ediciones de dicho periódico correspondientes a los días 2, 9, 16 y 23 de mayo y 1 de junio de 1954. Para la fecha de la vista de esta moción el abogado de la parte demandante había renunciado la representación que ostentaba. A pesar de este hecho, y de que la vista correspondiente aparentemente se celebró sin la comparecencia de la parte demandante o de su representante legal, el tribunal declaró sin lugar la moción. La notificación de esta resolución se hizo al abogado que había renunciado, a pesar de que el escrito de renuncia ya constaba en los autos.

En 23 de julio de 1957, una de las demandantes personalmente compareció y presentó una moción para la "reinstala-

ción" del pleito. Después de varios trámites, finalmente en 30 de octubre de 1957, se dictó una resolución dejando sin efecto la sentencia de archivo. Contra esta resolución se entabló recurso de apelación por algunos de los demandados.

El tribunal de instancia, después de un análisis de los hechos, expresó que:

"El 4 de mayo de 1954, después de haberse señalado una conferencia previa al juicio, se concedió un término de 10 días a los demandantes para que comenzaran a publicar los edictos para emplazar a muchos de los demandados, según la orden del Tribunal de 24 de febrero de 1954. Independientemente de los documentos que se unieron después de dictada la sentencia, el primer edicto se pudo haber publicado el 14 de mayo de 1954. Transcurrido el mes de su publicación, una vez por semana, y los 40 días que tenían los demandados para comparecer después del último edicto, ello cubría hasta el 23 de julio de 1954. Los demandantes no podían hacer gestión alguna, esto es, no podían pedir que se anotara la rebeldía a dichos demandados de no comparecer éstos, y que se señalara el caso, por lo menos hasta esta fecha 23 de julio de 1954. Entre el 23 de julio y el 26 de noviembre, 1954, fecha en que se dictó la sentencia obviamente no había transcurrido el período de 6 meses que requiere la Regla 11. Según aparece también de los autos en documentos que se unieron con posterioridad a la sentencia, los edictos se publicaron en 2, 9, 16 y 23 de mayo y 1ro. de junio de 1954. Los demandados tenían 40 días para comparecer, o sea, hasta el 12 de julio de 1954; y de no comparecer, no era hasta esta fecha que los demandantes podían pedir un remedio contra ellos. Entre el 12 de julio y el 26 de noviembre de 1954 tampoco transcurrió un período de 6 meses.

"Derivándose la facultad del Juez Administrador para dictar una sentencia de archivo única y exclusivamente en la Regla 11 para la administración del Tribunal de Primera Instancia, tal sentencia dictada sin haber transcurrido el período de 6 meses de inactividad, es per se nula y así lo resolvemos. En vista de ello no es necesario que discutamos los efectos de la Resolución posterior del juez Sr. Abrahan Díaz González negándose a dejar sin efecto dicha sentencia, ya que la misma es inexistente."

Los apelantes insisten en que la moción sobre reinstalación del caso debió ser desestimada de plano por haber sido

presentada después de expirado el término de seis meses a que se refiere la Regla 60 (b) de las de Enjuiciamiento Civil de 1943, y que, además, es errónea la conclusión del tribunal *a quo* sobre la nulidad de la sentencia, ya que esta nulidad no aparece de la faz de los autos según las constancias de los mismos a la fecha en que se dictó la sentencia.

Es innegable que cuando la moción para que se deje sin efecto la sentencia se fundaba en error, inadvertencia, sorpresa o negligencia excusable, bajo las disposiciones de la anterior Regla 60 (b), debía ser presentada dentro de un término de seis meses de haberse dictado la misma. *Great American Insurance Co.* v. *Corte*, 67 D.P.R. 564 (1947); *Pueblo* v. *632 Metros Cuadrados de Terreno*, 74 D.P.R. 961 (1953); *Gerena* v. *Tribunal Superior*, 79 D.P.R. 571 (1956). Sin embargo, ese término no era aplicable cuando el fundamento aducido para solicitar tal remedio era el de fraude, cf. *Martínez* v. *Tribunal Superior*, 83 D.P.R. 358 (1961), o el de la nulidad de la sentencia. Así se interpretó en California, estado cuyo artículo 473 del Código de Enjuiciamiento Civil, equivalente al artículo 140 de nuestro anterior Código de Enjuiciamiento Civil, (32 L.P.R.A. sec. 725), fue el modelo para la Regla 60 (b) federal, *Roca* v. *Thompson*, 77 D.P.R. 419 (1954); *Martínez* v. *Tribunal Superior, supra;* Moore's *Federal Practice* (2a. ed.), vol. 7, pág. 23. En relación con el poder de un tribunal para corregir sus sentencias, se dijo en *Olivera* v. *Grace*, 122 P.2d 564, 566, (1942) que "independientemente de la facultad concedida estatutariamente para ello, se afirma que los tribunales tienen poder inherente para corregir sus expedientes, para que reflejen la realidad, y bajo este poder inherente, las cortes han corregido frecuentemente sus sentencias finales, cuando por errores u omisiones, las dictadas no correspondían con las que se intentó emitir . . . Igualmente, un tribunal tiene poder inherente, irrespectivamente del estatuto, para

corregir sus expedientes dejando sin efecto una sentencia que es nula de su propia faz . . ." Véanse, *Alcázar* v. *Corte*, 67 D.P.R. 727 (1947); *Pueblo* v. *632 Metros Cuadrados de Terreno, supra; Iturriaga* v. *Fernández*, 78 D.P.R. 31, 37 (1955); 29 Cal. Jur.2d, sec. 189 et seq., pág. 144. Sobre la nulidad de la sentencia dictada en 26 de noviembre de 1954, compárese *Rey Realty Corporation* v. *Osorio*, 81 D.P.R. 873 (1960).

█ Sin embargo, no creemos que sea necesario entrar a considerar estas cuestiones. La actuación del tribunal de instancia cuya revisión solicita la parte apelante se justifica como un ejercicio de la facultad que le concedía la Regla 60 (a) de 1943, que disponía que "errores clericales en las *sentencias*, órdenes, y otras partes del récord, y los causados por inadvertencia u omisión, podrán corregirse *en cualquier tiempo*, previa notificación, por la corte a su propia iniciativa, o a moción de cualquier parte". (Bastardillas nuestras.) Bajo las disposiciones de la correspondiente regla federal, los tribunales no se limitaron a considerar dentro de sus atribuciones bajo esta regla meros errores formales, sino que debido a "las limitaciones indebidamente restrictivas de la Regla 60 (b) para la corrección de errores sustanciales", se amplió el radio de acción de la Regla 60 (a) aún "más allá de su verdadero alcance". Esta interpretación no es necesaria actualmente en vista de que la Regla 49.2 se amplió considerablemente en 1958, y se adicionaron otros fundamentos para solicitar el relevo de los efectos de una sentencia.[2] Moore's *Federal Practice*, (2a. ed.) vol. 6, págs. 4042

---

[2] Bajo las disposiciones de la Regla 49.2 se han adicionado como fundamentos para la moción de relevo los siguientes:

"Descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

"Fraude (incluyendo el que hasta ahora se ha denominado intrínseco y también el llamado extrínseco), falsa representación u otra conducta impropia de una parte adversa;

a 4052; Cf. *Blaine* v. *Peters*, 194 F.2d 887 (C.A. D.C. 1952) ; *Bucy* v. *Nevada Construction Co.*, 125 F.2d 213 (C.C.A. 9, 1942).

■ La inadvertencia del tribunal al dictar la orden para mostrar causas de 8 de noviembre de 1954 es explicable, pues la gestión que se había requerido a la parte demandante que realizara—publicación de edictos—no tenía necesariamente que aparecer de los autos. Además, este trámite de desestimación por falta de diligencia no va generalmente precedido de un examen cuidadoso de los autos, sino que participa más bien de una gestión administrativa de la secretaría, que se realiza en forma más o menos mecánica. Es conveniente que los tribunales eliminen de sus congestionados calendarios aquellos pleitos que no han tenido verdadero movimiento, pero como en términos generales una sentencia de archivo tiene la autoridad de cosa juzgada,[3] es necesario tener gran cuidado en todo el trámite de archivo.

*Se confirmará la resolución dictada por el Tribunal Superior, Sala de San Juan, en 30 de octubre de 1957.*

"Nulidad de la sentencia;

"La sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continuara en vigor; o

"Cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

"Las disposiciones de esta regla no serán aplicables a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en las razones (3) ó (4)."

[3] Regla 41(b) de las de Procedimiento Civil de 1958; *Pérez* v. *Bauzá* 83 D.P.R. 220 (1961); *Bolker* v. *Tribunal*, 82 D.P.R. 816 (1961).