Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel IV

| | | |
|---|---|---|
| JULIO RUIZ COLÓN<br>Apelado<br><br>v.<br><br>AUTORIDAD DE CARRETERAS y TRANSPORTACIÓN DE PR<br>Demandada<br><br>JOSÉ A. LUGO LUGO y JAL OUTLET, INC.<br>Apelantes | KLAN201901135 | Apelación procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Caso Núm.<br>K AC2013-0155<br><br>Sobre:<br>Acción Civil, Cobro de Dinero |

Panel integrado por su presidente, el Juez Rivera Colón y el Juez Adames Soto y el Juez Bonilla Ortiz[1]

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 25 de marzo de 2024.

Comparece el señor José A. Lugo Lugo y JAL Outlet, Inc., (en conjunto, los apelantes), solicitando que revoquemos una *Sentencia Sumaria Final*[2] emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, (TPI), el 3 de julio de 2018. Mediante dicho dictamen el foro primario declaró *Con Lugar* una demanda presentada por el señor Julio Ruiz Colón (señor Ruiz Colón o el apelado), que inicialmente fue dirigida contra la Autoridad de Carreteras y Transportación, (ACT), pero que resultó posteriormente enmendada para incluir como demandados a los apelantes. En consecuencia, ordenó a los apelantes a satisfacer la suma de $360,000.00, más costas e intereses, así como $7,000.00 en concepto de honorarios de abogados por temeridad.

---

[1] Mediante Orden Administrativa OATA-2023-040 se designa al Hon. Fernando J. Bonilla Ortiz, en sustitución de la Hon. Gina R. Méndez Miró quien dejó de ejercer funciones como Jueza del Tribunal de Apelaciones desde el 24 de febrero de 2023.

[2] El 6 de septiembre de 2019, el foro *a quo* enmendó la sentencia sumaria apelada **a los únicos fines de añadir en su parte dispositiva a la co-demandada JAL Outlet., Inc**. Anejo XXXIX del Apéndice del *escrito de apelación*, págs. 170-179.

Según se advierte en el epígrafe, estamos ante una causa de acción por cobro de dinero, cuya rápida dilucidación se ha visto afectada, entre otras razones, porque fue paralizada a causa de que la ACT se acogiera al proceso de quiebra dispuesto por la *Public Law* 114-187, *Puerto Rico Oversight, Management, and Economic Stability Act*, (PROMESA).

## I. Resumen del tracto procesal pertinente

El 4 de marzo de 2013, el señor Julio Ruiz Colón h/n/c/ HMP Management Corp., incoó una *Demanda* contra la ACT, al amparo del Art. 1489 del derogado Código Civil de Puerto Rico[3], 31 LPRA sec. 4130. Este solicitó al TPI que ordenara a la ACT, a retener cierta cantidad de dinero como presunto dueño de obra, para que los pagara al señor Ruiz Colón, como consecuencia de unos trabajos de construcción realizados en un proceso de expropiación forzosa. Se adujo que la ACT había acordado con el señor Julio A. Lugo Lugo, que este llevaría a cabo unos trabajos para viabilizar la referida expropiación forzosa, siendo el dueño de la propiedad a ser expropiada Desarrollo Industriales y/o José Arturo Lugo.

Luego de varios incidentes procesales, el 3 de septiembre de 2013, la ACT presentó una *Moción de Desestimación al Amparo de la Regla 10.2 de las de Procedimiento Civil de 2009.*[4] Arguyó que procedía la desestimación de la demanda, por esta no exponer una reclamación que justificara la concesión de un remedio, así como por falta de parte indispensable. Sobre lo último, esgrimió que de las propias alegaciones de la demanda surgía el nombre del dueño del inmueble a ser expropiado, Desarrollos Industriales y/o José A. Lugo, pero no fue incluido como parte.

El 31 de octubre de 2013, el TPI celebró una vista sobre el estado de los procedimientos, en la cual la ACT reiteró su planteamiento sobre falta de parte indispensable.

---

[3] El Código Civil de Puerto Rico de 1030 fue derogado por el Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.

[4] Anejo V del Apéndice de la Apelación, págs. 11-23.

Habiendo concedido el foro primario amplia oportunidad para que el apelado enmendara la demanda, a los fines de incluir una parte indispensable, el 3 de junio de 2014 se presentó la *Demanda Enmendada,* incluyendo como partes al señor José A. Lugo Lugo, a su esposa, la señora Doris Rivera Hernández, a la Sociedad Legal de Gananciales compuestas por estos, (matrimonio Lugo-Rivera), y a JAL Oulet Inc. A tenor, el 14 de septiembre de 2014, fue emplazado el señor José Arturo Lugo, *por sí y en representación de la sociedad de bienes gananciales*[5].

El 22 de julio de 2014, la ACT presentó su *Contestación a la Demanda enmendada,* negando la mayoría de las alegaciones y levantando defensas afirmativas.[6]

Concedidas varias prórrogas por el TPI, y otros pronunciamientos, (entre ellos una *Orden* dejando sin efecto la anotación de rebeldía previamente emitida contra los apelantes), el 12 de diciembre de 2014, **tanto JAL Outlet, Inc., como el señor José A. Lugo, presentaron sus respectivas *contestaciones a la demanda enmendada*.** En la contestación a demanda presentada por José A. Lugo, y en la de JAL Outlet, compareció el mismo bufete de abogados, Ramírez Ramírez, aunque suscritas por el licenciado José Rafael Ramírez Ramos. En ambos escritos fue informado que la señora Rivera Hernández había fallecido, el 2 de diciembre de 2014.

Posteriormente, en una vista del 21 de mayo de 2017, fue llevada a la atención del tribunal *a quo* que la ACT fue incluida entre las entidades gubernamentales que se acogieron al proceso de quiebra bajo PROMESA. Ante lo cual, fue argumentado que procedía la paralización automática de los procedimientos en su contra, en virtud del *Automatic Stay* dispuesto en las secciones 362 y 922 del Código de Quiebra Federal, 11 USC secs. 362(a)

---

[5] Apéndice IV del recurso de apelación, pág. 10. Contrario a lo que afirman los apelantes en el *recurso de apelación,* estos fueron emplazados dentro del término de 120 días que dispone la Regla 4.3(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 4.3(c).
[6] Íd., Anejo XVI, págs. 45-50.

y 922(a).[7] De conformidad, el 16 de junio de 2017, el foro de instancia emitió una *Sentencia* ordenando la paralización y el archivo administrativo de los procedimientos en contra de la ACT, hasta que el foro federal considerando la petición de quiebras determinara otra cosa.[8] Esta *Orden* de paralización no fue extendida a las demás partes en el pleito, por lo que el proceso siguió su curso respecto a estas.

Pasado un tiempo, el 8 de febrero de 2018, los apelantes presentaron una *Moción de Sentencia Sumaria*.[9] En su brevísima *Moción de sentencia sumaria*, estos enumeraron una serie de hechos que presuntamente no estaban en controversia, aunque sin incluir un solo documento para sustentarlos. Entonces, al referirse al derecho aplicable, adujeron que procedía desestimar la demanda sumariamente, porque la reclamación del apelado estaba basada en el Art. 1489 del Código Civil, *supra*, el cual aplicaba solo a materialistas en una obra de construcción. Es decir, sostuvieron que la acción provista por el artículo aludido proporcionaba un remedio a los terceros ajenos a la relación contractual, a saber, el contrato de obra, para que pudieran recobrar el valor de los materiales y servicios prestados. Sobre lo cual, arguyeron que los contratos con una agencia o entidad gubernamental tenían que constar por escrito y notificarse a la Oficina del Contralor, y en el caso de epígrafe no existía un contrato entre la ACT y el demandante, de aquí que el artículo del Código Civil aludido no resultara de aplicación en este caso.

A raíz de ello, los apelados presentaron *Escrito en oposición a la sentencia sumaria del demandado*[10]. En este se aseveró que la *Moción de*

---

[7] Íd., tercer párrafo.

[8] *Íd.*

[9] *Íd.*, Anejo XXXII, págs. 145-148.

[10] A pesar de que la Regla 16(E)(1)(d) y (e) de nuestro Reglamento, 4 LPRA Ap. XXII-B, requiere que en el apéndice del recurso de apelación se incluya, en lo pertinente, toda moción que conste en el expediente original del TPI, donde se discuta expresamente cualquier asunto planteado en el escrito de apelación, y cualquier documento que le pueda ser útil a este foro intermedio para resolver la controversia, los apelantes **no** incluyeron copia del *Escrito en oposición a la sentencia sumaria del demandado*. No hay duda de que tal documento resultaba esencial para atender el asunto ante nuestra consideración. Tomamos conocimiento de dicha moción, por cuanto ordenamos que los autos originales fueran alzados y así pudimos examinarlo, pero debió haber sido provisto por los apelantes.

*sentencia sumaria* instada por los apelantes no cumplía con los requisitos específicos que requieren la Regla 36 de Procedimiento Civil, 31 LPRA Ap. V, R. 36. El resto del contenido del *Escrito en oposición a la sentencia sumaria* fue dedicado por entero a refutar argumentos de derecho esgrimidos en la moción de sentencia sumaria, referentes a la contratación gubernamental. Es decir, en este escrito en oposición a sentencia sumaria no fue propuesta una lista de hechos incontrovertidos, que diera lugar a la aplicación del derecho correspondiente y, a su vez, habilitara al foro primario dictar sentencia a su favor. En consonancia, los apelados sólo solicitaron como remedio, la imposición de honorarios de abogado a los apelantes por temeridad, y la denegatoria del remedio sumario solicitado.

Pendiente por resolver la moción dispositiva aludida, el 7 de febrero de 2018, el apelado incoó una *Moción Solicitando Eliminación de las Alegaciones del Demandado por Incumplimiento de las Reglas de Descubrimiento de Prueba*. Transcurridos unos días, esta misma parte instó sendas mociones reiterando su solicitud de eliminación de alegaciones, el 14 de marzo y 25 de abril de 2018.

En el interín, el foro apelado emitió *Sentencia Parcial*, acogiendo una solicitud del apelante para desistir con perjuicio de la demanda presentada en contra de la ACT. Tal determinación del tribunal *a quo* se tomó a pesar de que, desde el 16 de junio de 2017, se había emitido una *Sentencia* ordenando la paralización y el archivo administrativo de los procedimientos en contra de la ACT, hasta que el foro federal que se encontraba considerando la petición de quiebras determinara otra cosa.

Lo cierto es que, volviendo la atención a la *Moción de sentencia sumaria* instada por los apelantes pendiente por resolver, **el TPI emitió una *Sentencia sumaria final* el 3 de julio de 2018,** pero a favor de los apelados, **notificada a las partes el 11 de julio de 2018**.

En la referida *Sentencia sumaria final* el foro primario enumeró una serie de determinaciones de hechos, para entonces concluir que: entre las

partes había surgido una relación contractual para la realización de unos trabajos de construcción; tales trabajos, realizados por el apelado, habían beneficiado a los co-demandados, aquí apelantes. Asimismo, determinó que, luego de los apelantes haber recibido el pago por parte de la ACT, cuya compensación no se hubiera recibido de no haberse realizado las obras en el terreno, se habían negado a satisfacer la suma acordada al apelado por los servicios prestados. Como resultado, el TPI dispuso que procedía dictar sentencia sumaria a favor del apelado, condenando al demandado José A. Lugo a satisfacerle la suma de $360,000.00, más costas e intereses, y $7,000.00, en concepto de honorarios de abogado. Dispuso además el foro primario, desestimar sin perjuicio la causa de acción instada contra la señora Doris Rivera, por cuanto, una vez fallecida, las partes no solicitaron su sustitución como lo requiere la Regla 22 de Procedimiento Civil[11].

Pasado un tiempo desde que fuera notificada la *Sentencia Sumaria Final*, el 17 de septiembre de 2018, tanto José A. Lugo como **JAL Outlet, Inc.**, instaron una *Moción para que se notifique la sentencia*. Tal como lo indica el título de dicha moción, sus promoventes sostuvieron no haber *encontrado* la notificación de la *Sentencia* en sus correos electrónicos. Es decir, los apelantes adujeron no haber sido debidamente notificados de la *Sentencia*.

En respuesta, mediante *Orden* de 10 de octubre de 2018, el tribunal *a quo* dispuso que la referida *Sentencia* había sido notificada al correo electrónico del representante legal de los apelantes y al alterno, el 11 de julio de 2018.

Con todo, el apelante José A. Lugo instó una segunda moción reiterando su solicitud para que se notificara la *Sentencia*, aduciendo haber comparecido a la Secretaría del Tribunal y no haber encontrado allí evidencia de su notificación.

---

[11] 32 LPRA Ap. V, R. 22.

Entretanto, el 6 de diciembre de 2018, los apelados instaron una *Moción interesando ejecución de Sentencia*.

Por su parte, el 2 de enero de 2019, el TPI emitió una *Resolución* resolviendo lo siguiente: (1) **en cuanto a la moción reiterando notificación de Sentencia instada por el apelante José A. Lugo, <u>No Ha Lugar</u>, pues** *esta suscriptora* **(la Juez)** *ha visto la notificación y surge que se notificaron ambas, la Sentencia Parcial y la Sentencia Final al Lcdo. Cardona a su correo electrónico que registró en el Registro Único de Abogado (RUA)*; (2) Ha Lugar la moción para que fuese ordenada la ejecución de la Sentencia instada por el apelado. A este último dictamen se acompañó un *Mandamiento de ejecución de Sentencia*, de 11 de enero de 2019.

El dictamen recogido en el párrafo que precede **no** fue impugnado a través de una moción de reconsideración ante el propio foro que la emitió, o mediante la presentación de recurso de *certiorari* ante nosotros.

Posteriormente, el 3 de septiembre de 2019, el apelado presentó ante el foro primario una *Moción solicitando sentencia sumaria final contra J.A.L. Outlet Inc.* En síntesis, este planteó que en la parte dispositiva de la *Sentencia Sumaria Final* emitida el 3 de julio de 2018, el TPI no había incluido a todos los demandados, pues solo se refirió a José A. Lugo, omitiendo a JAL Outlet Inc., corporación que también figuraba como parte demandada. El apelado llamó la atención al hecho de que en la *Sentencia* se hizo un recuento de los Requerimientos de Admisiones que se incorporaron como parte de la *Oposición a Sentencia Sumaria*, los cuales incluían a JAL Outlet Inc., además de ser mencionada como una corporación debidamente registrada en el Departamento de Estado de Puerto Rico. Reiteró que, en el cuerpo de la *Sentencia* JAL Outlet Inc. se determinó que dicha corporación fue parte del proceso de expropiación y de los acuerdos con la ACT, lo que clara y diáfanamente también surgía de las argumentaciones incluidas en las mociones de sentencia sumaria. A tenor, solicitó que fuera dictada *Sentencia*

*Sumaria Final* incluyendo a dicha corporación como corresponsable por la sentencia.

En consecuencia, el 9 de septiembre de 2019, el TPI emitió una *Sentencia Sumaria Final Nunc Pro Tunc,* acogiendo la solicitud del apelado, a los únicos fines de incorporar a JAL Outlet Inc. en la parte dispositiva del dictamen que había emitido el 3 de julio de 2018. Esta *Sentencia Sumaria Final Nunc Pro Tunc* fue notificada a las partes el 9 de septiembre de 2019.

Entonces, tomando la fecha de la notificación de la *Sentencia Sumaria Final Nunc Pro Tunc* como punto de partida para presentar *recurso de apelación,* los apelantes instaron tal recurso ante nosotros el 7 de octubre de 2019. Estos le imputaron al TPI la comisión de los siguientes errores:

1. Erró el TPI al dictar sin jurisdicción sentencia sumaria final contra los demandados apelantes porque estos fueron emplazados fuera de la fecha establecida para diligenciar los emplazamientos.

2. Erró el TPI al dictar sentencia sumaria final sin jurisdicción contra los demandados apelantes porque hacía falta una parte indispensable.

3. Erró el TPI al dictar sentencia sumaria final contra los demandados apelantes sin tomar en cuenta las sustanciales controversias de hechos y de derecho.

4. Erró el TPI al interpretar y aplicar el derecho sobre contratos.

5. Erró el TPI al dictar sentencia sumaria sin tomar en consideración que no fue sustituida una de las partes que falleció durante el proceso.

6. Erró el TPI al no considerar la solicitud de sentencia sumaria [presentada] por los demandados apelantes la cual no fue contestada por el demandante apelado conformen (sic) a derecho.

Por su parte, el 28 de octubre de 2019, el apelado compareció ante nosotros, mediante escrito intitulado *Alegato de la Parte Apelada.*

Sin embargo, luego de este Panel haber estudiado las incidencias procesales del caso, mediante *Sentencia* de 19 de agosto de 2020, decidió ordenar la paralización de los asuntos pendientes en apelación, hasta que culminase el proceso de quiebra seguido por la ACT en la Corte Federal, al amparo de PROMESA. Como ha venido ocurriendo en casos bajo similares circunstancias, tal determinación tuvo como consecuencia que este caso se

mantuviera paralizado en su etapa apelativa por un tiempo prolongado, a causa de las incidencias atribuibles al proceso de quiebra aludido.

Finalmente, habiendo acontecido unos cambios importantes en el proceso federal en el que participa ACT bajo PROMESA, según detallamos en nuestra *Resolución* de 31 de enero de 2023, decidimos reactivar el trámite apelativo pendiente ante nosotros en este caso respecto a los apelantes, aunque manteniendo la paralización de los asuntos referentes a la ACT. Por tanto, interpretamos que la paralización de los procesos apelativos por motivo de PROMESA continuaba afectando la causa de acción presentada contra la ACT, pero no respecto a los apelantes[12].

Finalmente, luego de atender varios asuntos procesales atinentes a la reapertura del cauce apelativo, y de haber ordenado la elevación de los autos originales, (por cuanto el apéndice del recurso de apelación se encontraba incompleto), nos hemos confrontado con una controversia jurisdiccional, cuya solución prima sobre cualquier asunto.

## II. Exposición de Derecho

### A. Jurisdicción

La jurisdicción se ha definido como el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *JMG Investment, Inc. v. Estado Libre Asociado de Puerto Rico*, 203 DPR 708, 715 (2019); *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 267 (2018); *Yumac Home v. Empresas Massó*, 194 DPR 96, 103 (2015); *Horizon Media v. Jta. Revisora, RA Holdings*, 191 DPR 228, 233 (2014). Los tribunales estamos llamados a ser fieles guardianes de nuestra jurisdicción, **aun cuando ninguna de las partes invoque tal defecto**. Por lo anterior, tanto los foros de instancia, como los foros apelativos, tienen el deber de analizar de forma prioritaria si poseen jurisdicción para atender las controversias que le sean presentadas. (Énfasis

---

[12] Los apelantes recurrieron de nuestra determinación sobre la reapertura del caso ante el Tribunal Supremo, mediante recurso de *certiorari*. Sin embargo, dicho alto Foro denegó la expedición del recurso de *certiorari* aludido, mediante *Resolución* de 14 de abril de 2023, notificada el 20 del mismo mes y año. Ver, CC-2023-0149.

provisto). *Ruiz Camilo v. Trafon Group, Inc., supra,* en la pág. 268; *Horizon Media v. Jta. Revisora, RA Holdings, supra*; *Shell Chemical v. Srio. Hacienda,* 187 DPR 109, en las págs. 122-123 (2012).

Lo anterior responde a que las cuestiones jurisdiccionales son materia privilegiada y deben resolverse con preferencia a los demás asuntos. *JMG Investment, Inc. v. Estado Libre Asociado de Puerto Rico*, supra. El Tribunal Supremo ha añadido, que evaluar los aspectos jurisdiccionales son parte de nuestro deber ministerial **y debe hacerse antes de que el tribunal pueda conocer del pleito**. *Ruiz Camilo v. Trafon Group, Inc., supra; Mun. San Sebastián v. QMC Telecom, O.G.P.,* 190 DPR 652, 660 (2014); *García v. Hormigonera Mayagüezana,* 172 DPR 1, 7 (2007). (Énfasis nuestro). De aquí que, si determinamos que no tenemos jurisdicción sobre un recurso o sobre una controversia determinada, debemos así declararlo y proceder a desestimarlo, pues, no tenemos discreción para asumir jurisdicción donde no la hay. *Mun. San Sebastián v. QMC, supra; Yumac Home v. Empresas Massó,* supra.

El Tribunal de Apelaciones debe ser celoso guardián de su jurisdicción y no tiene discreción ni autoridad en ley para asumirla donde no la hay. *Souffront v. A.A.A.,* 164 DPR 663, 674 (2005). Cuando un tribunal acoge un recurso a sabiendas de que carece de autoridad para entender en él, actúa de manera *ultra vires*. *Maldonado v. Junta Planificación,* 171 DPR 46, 55 (2007). Por ello, al carecer de jurisdicción o autoridad para considerar un recurso, lo único que procede en Derecho es la desestimación de la causa de acción. *Romero Barceló v. E.L.A.,* 169 DPR 460, 470 (2006); *Carattini v. Collazo Syst. Analysis, Inc.,* 158 DPR 345, 370 (2003); *Pérez v. C.R. Jiménez, Inc.,* 148 DPR 153, 153-154 (1999).

En armonía con lo dicho, el Tribunal de Apelaciones puede desestimar, *motu proprio*, un recurso por falta de jurisdicción. Regla 83(B)(1) y (C) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83(B)(1) y (C).

### B. El término para presentar recurso de apelación

La jurisdicción y competencia de este Tribunal para atender un recurso de apelación están establecidas claramente en las disposiciones legales provistas por la Ley Núm. 103-2003, conocida como Ley de la Judicatura de 2003 (en adelante, Ley de la Judicatura de 2003), según enmendada, 4 LPRA secs. 24(t) *et seq.*, la Regla 52.2(a) de Procedimiento Civil, 32 LPRA Ap. V R. 52.2(a), y en la Regla 13 de nuestro Reglamento, 4 LPRA Ap. XXII-B R. 13. A tales efectos, resulta imprescindible resaltar que el Artículo 4.006(a) de la Ley de la Judicatura de 2003, supra, 4 LPRA sec. 24y(a), indica que este Tribunal conocerá de toda sentencia final dictada por el Tribunal de Primera Instancia mediante recurso de apelación. Este Tribunal tiene facultad para atender los méritos de un recurso de apelación al amparo del citado Artículo 4.006(a), *supra*, **si el mismo se presenta oportunamente dentro del término jurisdiccional de treinta (30) días, contado a partir de archivo en autos de copia de la notificación de la sentencia apelada**, a tenor con lo dispuesto por la Regla 13(A) de nuestro Reglamento, 4 LPRA Ap. XXII-B R. 13(A). (Énfasis provisto).

De igual modo la Regla 52.2 (a) de Procedimiento dispone que "[l]os recursos de apelación al Tribunal de Apelaciones o al Tribunal Supremo para revisar sentencias deberán presentarse dentro del término jurisdiccional de treinta (30) días contados desde el archivo en autos de copia de la notificación de la sentencia dictada por el tribunal apelado". 32 LPRA Ap. V R. 52.2(a).

Los términos para apelar sentencias sean penales o civiles, son fijados por ley para conferir jurisdicción al tribunal apelativo. *Pueblo v. Ortiz Couvertier*, 132 DPR 883, 890-891 (1993); *Pueblo v. Mojica Cruz*, 115 DPR 569, 574 (1984); *Pueblo v. Miranda Colón*, 115 DPR 511, 513 (1984). Es norma reiterada que un término de naturaleza jurisdiccional es de carácter fatal y su incumplimiento priva al foro apelativo de jurisdicción para atender el recurso instado. En virtud de ello, "[c]ontrario a un término de

cumplimiento estricto, un término jurisdiccional es fatal, improrrogable e insubsanable, rasgos que explican por qué no puede acortarse, como tampoco es susceptible de extenderse". *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000).

### C. La enmienda a Sentencia *Nunc pro tunc*

La Regla 49.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.1, dispone que "[l]**os errores de forma** en las sentencias, órdenes u otras partes del expediente y los que aparezcan en [e]stas por inadvertencia u omisión, podrán corregirse por el tribunal **en cualquier tiempo**, a su propia iniciativa, o a moción de cualquier parte, previa notificación, si ésta se ordena." *Otero Vélez v. Schroder Muñoz*, 200 DPR 76, 91 (2018). (Énfasis provisto). Esta regla le permite al tribunal que dictó sentencia corregir cualquier *error de forma o que no vaya a la sustancia de la sentencia, orden o resolución, ni que se relacionan con asuntos discrecionales. S.L.G. Coriano-Correa v. K-mart Corp.*, 154 DPR 523, 529 (2001).

Con relación al momento en que el tribunal puede corregir los errores de forma, inadvertencias u omisiones en las sentencias, al menos desde *Lawton v. Rodríguez*, 41 DPR 447 (1930), se indicó que puede ser hasta después de transcurridos los términos para apelar. La Regla 49.1 citada expresamente indica que la corrección por el tribunal puede ser en cualquier tiempo.

Cabe añadir que, aunque la Regla 49.1 dispone lo relativo a la facultad del Tribunal de corregir los errores de forma, **inadvertencia** y omisión aludidos, *también se considera la facultad para hacer correcciones de este tipo como una de carácter inherente al poder judicial.* R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, 6ta Ed., 2017, LexisNexis, pág. 464. Ejemplo de lo afirmado por el tratadista citado es la expresión de nuestro Tribunal Supremo en *Security Insurance Co. v. Tribunal Superior*, 101 DPR 191, 203-204 (1973), a los efectos de que *en varias ocasiones hemos hecho reconocimiento de la facultad inherente que tienen los*

*tribunales de corregir errores de forma que aparezcan de sus récords.* Además, *independientemente de la facultad concedida estatutariamente para ello, se afirma que los tribunales tienen poder inherente para corregir sus expedientes, para que reflejen la realidad, y bajo este poder inherente, las cortes han corregido frecuentemente sus sentencias finales, cuando por errores u omisiones, las dictadas no correspondían con las que se intentó emitir. Sucesión Rosario v. Sucn. Cortijo,* 83 DPR 678 (1961).

El mismo Alto Foro ha señalado que se puede utilizar la Regla 49.1 de Procedimiento Civil, *supra,* para corregir *errores de forma* que surjan de los expedientes del tribunal, *Sucn. Rosario v. Sucn. Cortijo,* 83 DPR 678, 682-683 (1961), y errores del secretario del tribunal al anotar la sentencia, *Pueblo v. Miranda,* 56 DPR 601, 603 (1940). También, ha permitido el uso de la enmienda *nunc pro tunc* para añadir la condena de entregar los frutos al reconocimiento del derecho de propiedad, *Martínez v. Delgado et al.,* 18 DPR 382 (1912), y para conceder costas en la sentencia cuando éstas se reconocen en la opinión, *Lawton v. Rodríguez,* 41 DPR 447 (1930). Es decir, la omisión en conceder el remedio es subsanable, por ser *error de forma,* mediante enmienda *nunc pro tunc,* si el derecho a cierto remedio está claramente sostenido por el expediente. *S.L.G. Coriano-Correa v. K-mart Corp.,* supra, pág. 530, citando a *Security Ins. Co. v. Tribunal Superior,* supra.

Por otra parte, la facultad inherente que tienen los tribunales de corregir los errores de forma que aparezcan de sus récords se ha usado para añadirle a una sentencia remedios adicionales que se deriven del remedio concedido originalmente. Por ejemplo, a la desestimación de una tercería se le ha añadido posteriormente la condena a pagar lo percibido por el tercerista en la venta de ciertos bienes tomados en posesión por este durante el procedimiento. *Security Ins. Co. v. Tribunal Superior,* supra, a la págs. 203–204, citando a *González v. Santini & Co.,* 26 DPR 553 (1918).

En *Insurance Co. of P.R. v. Tribunal Superior,* 100 DPR 405 (1972), el Tribunal Supremo consideró que era un error de forma, corregible bajo la

Regla 49.1, la omisión de conceder intereses desde la interposición de la demanda cuando de la sentencia surgía, implícitamente, la temeridad de la parte perdidosa, toda vez que fue condenada a pagar honorarios de abogado. Allí se sostuvo que la cuestión envuelta no era una de derecho sustantivo, sino que era una mera omisión o inadvertencia de las cubiertas por la Regla 49.1, *supra. Íd.*, a las págs. 204-205.

Una sentencia puede ser enmendada *nunc pro tunc, **cuando los autos revelan que la sentencia tal como ha sido enmendada hubiese sido dictada desde el primer momento, a no ser por la inadvertencia de la corte o el error u omisión del secretario**. Lawton v. Rodríguez*, supra, pág. 4. (Énfasis provisto). Si el derecho a cierto remedio está claramente sostenido por el récord, la omisión en concederlo es subsanable, por ser un error de forma, mediante enmienda *nunc pro tunc* añadiéndolo. *Security Ins. Co. v. Tribunal Superior*, supra.

Al igual que en el caso de una enmienda ordinaria de una sentencia, la facultad del tribunal para enmendar sus sentencias *nunc pro tunc* no se extiende a modificar la sentencia substantiva previamente dictada o que se tuvo la intención de dictar. **La intención del tribunal debe ser clara y la sentencia debe ajustarse en un todo a la opinión que la sirve de base**. *Lawton v. Rodríguez*, supra, pág. 2. (Énfasis provisto).

Las referidas enmiendas deberán estar sostenidas por el expediente judicial y no podrán menoscabar los derechos ya adquiridos por cada litigante cuando ha transcurrido en exceso el término dispuesto para apelar o solicitar revisión. *Otero Vélez v. Schroder Muñoz*, supra, pág. 91. Es decir, no procede una enmienda *nunc pro tunc* para corregir errores de derecho, porque afectaría los derechos sustantivos de las partes. *Íd.* Tampoco procede tal tipo de enmienda ante una cuestión de interpretación de ley. *Infante de Arce v. Montalvo Mulero*, 165 DPR 757, 779 (2005). El criterio rector es que la cuestión a ser enmendada no conlleve la alteración de un derecho sustantivo, sino la corrección de una mera inadvertencia. *Íd.* Por lo mismo,

el Dr. Cuevas Segarra afirma que esta regla *no se puede utilizar como sustituto del recurso de apelación, ni para relevar a una parte de una sentencia.* J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* 2da Ed. Tomo IV, Publicaciones JTS, 2011, pág. 1393.

Finalmente, las enmiendas encaminadas a corregir los tipos de errores previstos en la Regla 49.1, son de naturaleza *nunc pro tunc*, es decir, **que se retrotraen a la fecha de la sentencia o resolución original**. (Énfasis provisto). *Otero Vélez v. Shroder Muñoz,* supra, pág. 91.

**III. Aplicación del Derecho a los Hechos**

a.

Según ha quedado visto, los apelantes presuntamente acuden ante nosotros solicitando la revocación de la *Sentencia Sumaria Final "Nunc Pro Tunc",* dictada por el tribunal *a quo* el 6 de septiembre de 2019, y notificada a las partes en esa misma fecha. Tomando esta fecha como punto de partida para computar el término jurisdiccional de treinta días con el que contaban los apelantes para presentar el recurso de apelación, ***en principio***, se podría pensar que estos acudieron de manera oportuna ante este Tribunal de Apelaciones, pues fue presentado el 7 de octubre de 2019[13].

No obstante, lo cierto es que, como lo indica su título, la referida *Sentencia* responde a una enmienda *Nunc Pro Tunc* que se introdujo a la *Sentencia Sumaria Final* dictada por el foro primario el 3 de julio de 2018, **notificada a las partes el 11 de julio de 2018**.

Entonces, partiendo del entendido de que las enmiendas previstas por la Regla 49.1 de Procedimiento Civil, supra, de naturaleza *nunc pro tunc*, **se retrotraen a la fecha de la sentencia o resolución original**, *Otero Vélez v. Shroder Muñoz,* supra, pág. 91, (énfasis provisto), nos resulta esencial determinar si la fecha en que se emitió y notificó la *Sentencia Sumaria Final "Nunc Pro Tunc"* marcó el punto de partida para computar el término para

---

[13] Con precisión, el término de treinta días se cumplía el 6 de octubre de 2019, pero, por ser domingo, resultaba extendido al próximo día laborable, lunes 7 de octubre, fecha en que fue presentado el recurso de apelación ante nuestra consideración.

presentar el recurso de apelación ante nuestra consideración, o si, por el contrario, la fecha correcta que inició dicho cómputo fue en la que se notificó a las partes la *Sentencia Sumaria Final,* el 11 de julio de 2018. Esta es la interrogante de carácter jurisdiccional a la que nos referimos, y su dilucidación precede cualquier otro asunto planteado. *Ruiz Camilo v. Trafon Group,* Inc., supra.

b.

Sobre lo anterior, cabe iniciar resaltando que, dictada la *Sentencia Sumaria Final* el 3 de julio de 2018, y notificada a las partes el 11 de julio de 2018, los apelantes **no** presentaron recurso en alzada alguno para cuestionar dicho dictamen. Es decir, notificada la referida *Sentencia Sumaria Final,* transcurrieron los términos para presentar moción de reconsideración o recurso de apelación, sin que los apelantes instaran alguna de dichas acciones, o solicitaran remedios post sentencia.

Entonces, no fue sino hasta el **17 de septiembre de 2018**, ya superados los términos para apelar, que tanto José A. Lugo, **como JAL Outlet Inc.**, acudieron al TPI a presentar una *Moción para que se notifique la sentencia.* Nótese que, en este momento procesal, ya había transcurrido el término jurisdiccional para que los apelantes pudieran presentar un recurso de apelación. En cualquier caso, en esta moción los apelantes sostuvieron que no habían *encontrado* la notificación de la *Sentencia Sumaria Final* en sus correos electrónicos.  Véase que los apelantes *no* esgrimieron que el TPI utilizara una dirección electrónica distinta o incorrecta a la utilizada en el resto del trámite procesal del caso para notificarles la *Sentencia Sumaria Final,* sino que, presuntamente, *no encontraron* la notificación de la *Sentencia Sumaria Final* en dichos correos electrónicos. Más adelante los apelantes presentaron otra moción ante el foro primario, planteando esencialmente el mismo asunto.

Esta controversia, sobre la alegada falla en la notificación de la *Sentencia Sumaria Final,* fue resuelta por el tribunal *a quo* de manera

taxativa en contra de los apelantes, advirtiendo en su dictamen dicho foro, mediante *Resolución* de **2 de enero de 2019**, que la propia Juez que presidía los procesos había visto la notificación de la *Sentencia Final* hecha a las partes, y, en referencia a los apelantes, **dicha notificación había sido dirigida al Lcdo. Cardona, a su correo electrónico, según registrado en RUA**. Es decir, el TPI zanjó que los apelantes habían sido debidamente notificados de la *Sentencia Sumaria Final* a la dirección electrónica provista, según constaba en RUA.

Habiendo decidido el TPI en contra de los apelantes el planteamiento sobre alegada falta de notificación de la *Sentencia Sumaria Final*, estos no recurrieron de tal dictamen ante nosotros, ni presentaron posteriormente alguna otra moción en que la cuestionaran. Cabe notar que, a pesar de que la falta de notificación válida de un dictamen judicial podría dar lugar a la presentación de una solicitud de nuevo juicio bajo la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, una vez los apelantes obtuvieron un reclamo adverso sobre la presunta notificación defectuosa, no volvieron a levantar tal argumento.

Entonces, ya superado con creces el año de haberse notificado a las partes la *Sentencia Sumaria Final*, el apelado instó ante el TPI una *Moción solicitando sentencia sumaria final contra JAL Oulet, Inc.*, el 3 de septiembre de 2019. Según precisamos en el tracto procesal, en su moción el apelado arguyó que procedía añadir en la parte dispositiva de la *Sentencia Sumaria Final* a *JAL Oulet, Inc.* para responder como codemandado pues: esta fue una de las partes demandadas, expresamente mencionadas en la referida Sentencia; en el cuerpo del dictamen el foro primario había reconocido a esta corporación; el foro primario asignó responsabilidad por la causa de acción presentada.

Es así como, acogiendo la petición del apelado, el foro apelado emitió la *Sentencia Sumaria Final Nunc Pro Tunc,* a los únicos fines de incorporar a

JAL Outlet, Inc. en la parte dispositiva del referido dictamen, y así la notificó a las partes el 6 de septiembre de 2019.

b.

Establecido lo anterior, solo resta por determinar si el foro primario estaba en posición de enmendar la *Sentencia Sumaria Final* utilizando el mecanismo provisto por la Regla 49.1 de Procedimiento Civil, supra, es decir, *nunc pro tunc*, o tenía algún impedimento para ello.

Cabe empezar recalcando que el TPI se encontraba hábil para enmendar la *Sentencia Sumaria Final,* aunque hubiese pasado más de un año de haber sido notificada, pues la Regla 49.1 dispone que los errores de forma en las sentencias pueden ser corregidos **en cualquier tiempo**, hasta después de transcurridos los términos para apelar. *Lawton v. Rodríguez,* supra. Por tanto, el foro primario actuó dentro de sus facultades inherentes de poder corregir los errores de forma que dimanen de sus dictámenes, en el momento procesal elegido.

Entonces, dirimiendo propiamente si el TPI podía añadir a JAL Oulets, Inc. en la parte dispositiva de su *Sentencia Sumaria Final,* utilizando el mecanismo provisto en la Regla 49.1, *supra,* es decir, mediante un dictamen *nunc pro tunc,* contestamos en la afirmativa.

Al así afirmar, lo primero que llama nuestra atención al comparar el contenido de la *Sentencia Sumaria Final vis a vis* la *Sentencia Sumaria Final "Nunc Pro Tunc",* es que, a excepción de su parte dispositiva, resultan idénticas. Es decir, no hay cambio ostensible alguno que identificar entre estas, a excepción de la falta de mención de JAL Outlets en la parte dispositiva. Como elaboraremos más adelante, JAL Outlets es distinguida como parte demandada, y responsable del impago al recurrido, a lo largo del contenido de ambas determinaciones.

Ya hemos acentuado que la enmienda *nunc pro tunc* ha sido autorizada cuando los autos revelan que la sentencia, tal como ha sido enmendada, **hubiese sido dictada desde el primer momento, a no ser por la**

**inadvertencia de la corte**. *Lawton v. Rodríguez*, supra. (Énfasis provisto). El criterio rector es que **la cuestión a ser enmendada no conlleve la alteración de un derecho sustantivo, sino la corrección de una mera inadvertencia**. *Otero Vélez v. Shroder*, supra. (Énfasis provisto). Si el derecho a cierto remedio **está claramente sostenido por el récord**, la omisión en concederlo es subsanable mediante enmienda *nunc pro tunc*, por ser un error de forma. *Security Ins. Co. v. Tribunal Superior*, supra. (Énfasis provisto). En los próximos párrafos nos detendremos a verificar si la inclusión de JAL Outlet, Inc. en la parte dispositiva de la *Sentencia Sumaria Final "Nunc Pro Tunc"* estuvo *sostenida por el récord*.

Es de notar que, luego de que el apelado presentara *Enmienda a demanda*, en la que JAL Outlet, Inc. fue incluida como parte demandada, esta corporación compareció como demandada en todos los procedimientos sobrevenidos antes del TPI dictar la *Sentencia Sumaria Final*. Así, esta corporación presentó: *Contestación a la demanda enmendada*, de manera separada de José A. Lugo Lugo; instó, por mencionar algunos, *Contestación a interrogatorio y requerimiento de admisiones*, *Moción de sentencia sumaria* y *Moción para que se notifique la sentencia,* junto a José A. Lugo.

Con relación a si el remedio concedido mediante la *Sentencia Sumaria Final Nunc Pro Tunc*, estaba *claramente sostenido por el récord y hubiese sido dictado desde el primer momento, a no ser por la inadvertencia de la corte*, claramente acontece en este caso. Tanto en la sección *Trasfondo Procesal*, como en las *Determinaciones de hechos* de *Sentencia Sumaria Final* ya se había mencionado expresamente a JAL Outlet, Inc. como corporación demandada, participante del proceso mediante el cual se acordó que el demandante hiciera unos trabajos que le favorecían, razón por la cual también fue dirigida la causa de acción en su contra. Examinada con detenimiento la *Sentencia Sumaria Final* resulta patente que el foro primario no incluyó a JAL Outlet, Inc. en su parte dispositiva, por una *mera inadvertencia,* factor que precisamente viabilizó que el tribunal, *a posteriori*,

pudiera corregir el error de forma mediante el mecanismo concebido en la Regla 49.1 de Procedimiento Civil, *supra*. En este contexto, la enmienda autorizada por el foro primario a la *Sentencia Sumaria Final,* a través de la *Sentencia Sumaria Final Nunc,* **no** tuvo un efecto en el derecho sustantivo, sino que atendió un mero error de forma.

Más aún, resulta evidente que el TPI dictó *Sentencia Sumaria* favorable a la parte recurrida basándose en el *Requerimiento de Admisiones* que la parte apelada cursó a los apelantes. A partir de ello, el foro apelado llegó a las siguientes determinaciones de hechos, de manera idéntica, tanto en la *Sentencia Sumaria Final*[14]*,* como en la *Sentencia Sumaria Final "Nunc Pro Tunc"*[15]:

a. **JAL** y/o José A. Lugo realizó unos acuerdos con la Autoridad de Tierras los cuales fueron reconocidos en los casos K EF005-0301 y K EF2004-0695.
b. **JAL** acordó con la ACT realizar obras de construcción para unos predios de JAL que la ACT expropió.
c. La construcción que **JAL** acordó realizar fue para beneficio de la ACT y pagada con fondos de la expropiación.
d. Para dar cumplimiento de la construcción requerida por la Autoridad de Tierras, **JAL** subcontrató a Julio Ruiz Colón, quien construyó la obra con especificaciones de la ACT.
e. **JAL** conoce que Julio Ruiz Colón realiza negocios como HMP Managment.
f. **JAL adeuda la suma de $360,000.00 al señor Julio Ruiz Colón.**

(Énfasis provisto).

La lectura de lo citado despeja cualquier duda sobre el hecho de que **el TPI impuso responsabilidad conjunta a JAL Outlet, Inc. y a José A. Lugo desde la *Sentencia Sumaria Final***, pero *por mera inadvertencia* no incluyó inicialmente a JAL en la parte dispositiva, lo que resulta precisamente en el fundamento que le permitió a dicho foro corregir posteriormente tal omisión a través de la enmienda *nunc pro tunc*. Es decir, los autos revelan sin dificultad alguna que la sentencia, tal y cual resultó al ser enmendada, hubiese sido dictada desde el primer momento contra JAL

---

[14] Apéndice 39 del *recurso de apelación*, pág. 173.
[15] Apéndice 41 del *recurso de apelación*.

Outlet, Inc., a no ser por la inadvertencia del TPI de no incluirla en la parte dispositiva.

En consecuencia, habiendo el TPI efectuado una mera corrección de forma en la *Sentencia Sumaria Final* notificada a las partes el 11 de julio de 2018, esta fecha marcaba fue la que marcó el inicio del término jurisdiccional de treinta (30) días que tenían los apelantes para instar *recurso de apelación*, **no** la fecha en que fue notificada la *Sentencia Sumaria Final Nunc Pro Tunc.* Es decir, las enmiendas incorporadas a la *Sentencia Sumaria Final* a través de la *Sentencia Sumaria Final Nunc Pro Tunc*, se retrotrajeron a la fecha en que fue dictada y notificada la sentencia original. Por tanto, la presentación por los apelantes del *recurso de apelación* ante nuestra consideración el 7 de octubre de 2019 fue tardía, privándonos de jurisdicción para atenderlo.

Habiendo determinado que no tenemos jurisdicción para considerar el recurso de apelación ante nuestra consideración, solo resta así declararlo y desestimar, pues no tenemos discreción para asumir jurisdicción donde no la hay. *Mun. de San Sebastián v. Q.M.C.,* supra.

**IV. Parte Dispositiva**

Careciendo este Tribunal de Apelaciones de jurisdicción para entender en el *recurso de apelación* instado, al haber sido presentado de manera tardía, procede su desestimación.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones